# Atwell *v.* The State.

### *Indictment for Selling Mortgaged Property.*

1.   *Sufficiency of indictment.*—An indictment, found before the Code of 1876
became operative, charging that the defendant "did remove, conceal, or sell
one yoke of oxen, personal property, for the purpose of hindering, delaying,
or defrauding C. C., who had a claim thereto under a written mortgage, with
a knowledge of the existence of such mortgage," is sufficient.

2.   *Conclusion of indictment.*—When the State of Alabama is named in the
caption of an indictment, it is sufficient if the indictment concludes "against
the peace and dignity of *the State,*" without again naming it.

3.   *Admissibility of defendant's declarations as evidence for him.*—The declara-
tions of the defendant while negotiating a sale of the mortgaged property, to the
effect that he had obtained the mortgagee's permission to sell, are not compe-
tent evidence for him when criminally prosecuted for making the sale.

4.   *Declarations of witness out of court ; when and how proved.*—The declara-
tions of a witness who has been examined, as to any material matter about
which he was not questioned, cannot be proved by another witness.   The wit-
ness himself must be first interrogated as to such declarations.

5.   *Selling or removing mortgaged property; constituents of offense, and rele-
vancy of evidence in defense.*—A conviction cannot be had for selling or removing
mortgaged property (Code, § 4353), unless the defendant sold or removed the
property for the purpose of hindering, delaying, or defrauding the mortgagee.
If he removed and sold it for the purpose of raising money to pay the mortgage
debt, honestly believing that the mortgagee assented to such removal and sale,
and having just cause so to believe, he is not guilty ; and with a view of show-
ing such a state of facts, having proved a conversation had with the mortgagee's
agent, by whom the mortgage was taken, with reference to the proposed re-
moval and sale, he should be allowed to prove facts tending to show the gen-
eral authority exercised by the agent in and about the mortgagee's business,
from which he might infer that the agent had authority to assent to such re-
moval and sale, although the agent and his principal both deny such authority.

FROM the Circuit Court of Crenshaw.

Tried before the Hon. JOHN K. HENRY.

The indictment in this case was found in March, 1876, and contained two counts ; the first count charging, that the defendant " did remove, conceal,. or sell one yoke of oxen, personal property, for the purpose of hindering, delaying, or defrauding Calvin C. Colquitt, who had a claim thereto under a written mortgage, with a knowledge of the existence of such mortgage ; against the peace and dignity of the State." Having been found " guilty as charged in the first count," the defendant moved in arrest of judgment, on the following grounds : 1st, " because the indictment is indefinite and uncertain ;" 2d, "because the averments of the first count are in the alternative ;" 3d, " because said count fails to show by whom said mortgage was executed ;" 4th, " because it fails to aver that defendant had knowledge of the existence of said mortgage ;" 5th, " because it fails to charge any indictable offense ;" 6th, " because it fails to follow the language of the statute in describing the offense ;" 7th, " because it fails to aver that the oxen were of any value." The court overruled the motion.

On the trial, as the bill of exceptions states, the State introduced in evidence the mortgage on the oxen ; which was executed by the defendant and one Jesse Chandler, by their marks duly attested, was dated the 27th February, 1875, and was given to secure a debt for $75 for advances to make a crop, which fell due on the 1st October, 1875. The mortgage conveyed, in addition to the yoke of oxen, a cow and calf, a mare, five head of cattle, and forty acres of land ; and contained a clause in the usual language, authorizing the mortgagee to take possession and sell on default. " Alfred Colquitt, a witness for the State, testified, that he was employed by Calvin C. Colquitt, in the year 1875, as a clerk, and was in charge of his business of merchandising in Bullock, Crenshaw county, and as such clerk he filled out the said mortgage ; that the oxen were included in the mortgage, and were present before said C. C. Colquitt's store at the time said mortgage was signed ; that he made out several other mortgages for his said brother, but, in each case, submitted them to his brother's approval and assent ; that in the fall of 1875 he met the defendant in the road, near Smithville, and that defendant stated to him that he wanted to sell the oxen to them, to pay the mortgage, as he would not be able to pay the mortgage. Witness replied, that they did not want them, and had no use for them. Defendant then stated, that he wanted to sell them to some one else ; to which witness replied, that he supposed it would be all right, if they

[Atwell v. The State.]

got their money—that all they wanted was their money.
Witness further testified, that one Rhodes was present at the
time; also, that he had no authority from C. C. Colquitt to
give defendant permission to sell said oxen;" also, that after
the law-day of the mortgage, he, as the agent of C. C. Col-
quitt, went to defendant's house, which was in Crenshaw
county, but did not find defendant at home, and did not find
the oxen; that he ascertained the direction the defendant
had gone, and followed after him, and found the oxen in the
possession of one Charles Jones, in Conecuh county, about
fifty miles from the defendant's house; that he took posses-
sion of them, drove them back, and sold them under the
mortgage; that the mortgage was still unsatisfied, and that
the defendant "had never been to see them about it since
the removal of said oxen." Charles Jones, another witness
for the State, was then introduced, and testified, "that he
bought said oxen from the defendant, in the fall of the year
1875, at his house in Crenshaw county; that he had never
seen defendant before; that he gave defendant, for the oxen,
one ox, and promised to give him twenty dollars more, but
had never done so. The defendant then proposed to prove
by said Jones, that defendant told him, at the time of said
trade, that said oxen were under mortgage to said C. C. Col-
quitt, but that he had permission to sell them." The court
excluded this evidence, on motion of the attorney for the
State, and the defendant excepted.

"Calvin C. Colquitt testified, for the State, that all of said
mortgage debt had not been paid. The State having here
rested, the defendant introduced Jesse Chandler as a witness,
who signed said mortgage with defendant, and who testified,
that defendant went off to sell said oxen in the open day-
light, about eight or nine o'clock in the morning, but went in
an opposite direction from Colquitt's; and he also stated, on
cross-examination, that all of said debt was not paid. One
Rhodes testified, for the defendant, that he heard the con-
versation between Alfred Colquitt and defendant near Smith-
ville; and that defendant stated to him that, whenever he
got tired of waiting for his money, to let him know, and that
he would sell the oxen, as he could get more for them than
he could by selling them under the mortgage; to which said
Colquitt made no reply, that he remembers. The defendant
then introduced one Deloach as a witness, who, being asked,
testified that said Alfred Colquitt was in charge of said C. C.
Colquitt's business of merchandizing, during the year 1875,
at Bullock in said county;" which statement was excluded
by the court, on objection by the State, and the defendant
excepted. "The defendant offered to prove by said witness,

also, that he had heard said C. C. Colquitt say, in the fall of 1875, that.said Alfred Colquitt had charge of his said business in Bullock, and that he had nothing to do with it;" but the court excluded this statement also, on objection by the State, and the defendant excepted. "The defendant proved also, by several witnesses, that his general character for veracity was good in his neighborhood. This was all the evidence in the case."

J. D. GARDNER, for the prisoner.

H. C. TOMPKINS, Attorney-General, for the State.

MANNING, J.—By the statute "to amend section 3705 (159) of the Revised Code," approved February 13th, 1875, it was enacted, that "any person who removes, conceals, or sells any personal property, for the purpose of hindering, de-laying, or defrauding any person who has a claim thereto under any written instrument, lien created by law for rent or advances, or any other lawful or valid claim, verbal or writ-ten, with a knowledge of the existence thereof; or if any person or persons buy, receive, or conceal any such property, with such knowledge of the existence of any such claim, with like intent; upon conviction thereof, he or they shall be punished as though he or they had stolen the same."

Appellant was found guilty as charged in a count of the indictment, which alleged that he "did remove, conceal, or sell one yoke of oxen, personal property, for the purpose of hindering, delaying, or defrauding Calvin C. Colquitt, who had a claim thereto under a written mortgage, with a knowl-edge of the existence of such mortgage; against the peace and dignity of the State." The indictment was returned by the grand jury before the Code of 1876, in which the statute quoted was, with some alteration of the language, embodied, became the law of the State. And the accusation is made in the terms of the act, and in accordance with the form pre-scribed in the Revised Code of 1867, for the like offense de-nounced in section 3707 of that Code. In the Code of 1876, the form of the indictment is somewhat changed. The court did not err in overruling the motion in arrest of judgment. *Nixon v. The State*, 55 Ala. 120; *Glenn v. The State*, 60 Ala. 104.

2. To say in an indictment, entitled in the commencement The State of Alabama, that the offense it charged was com-mitted "against the peace and dignity of the State," is equiva-lent to saying "against the peace and dignity of the State of *Alabama.*"

[Atwell v. The State.]

3. What the defendant said when he was negotiating a sale of the oxen, in regard to the permission to do so received from the mortgagor, was not admissible. If it were, any person, while intending to violate the law, might, in the act of doing so, make evidence by his declarations for his own defense.—*Nixon v. The State, supra.*

4. Nor did the circuit judge err in refusing to allow Deloach to testify what he had heard Calvin C. Colquitt, the mortgagee of the oxen, say of Alfred Colquitt having charge of his business. Calvin Colquitt had himself been upon the stand as a witness, and was not interrogated about any such declaration. When a person, competent to testify, is present, and examined as a witness in a cause, his statement of what he has said, of any matter involved in it, must be heard, before a third person can be permitted to prove what he said. And, generally, his attention must be called to the time, place, and presence, when and in which the declarations to be proved are supposed to have been made.

5. But, was not defendant entitled to show that Alfred Colquitt, who took from him the mortgage to Calvin C. Colquitt, for advances to make a crop with, was openly acting, during the year 1875, as the apparent general agent of the latter between him and his customers? Alfred Colquitt had testified, that he was the clerk of Calvin C., "and was in charge of his business of merchandizing in Bullock, Crenshaw county, and as such clerk filled out the said mortgage," &c.; and that in the fall of 1875 (the mortgage debt being payable the 1st of October in that year), "he met defendant in the road, near Smithville," and was told by him that "he wanted to sell said oxen to *them*, to pay the mortgage, as he would not be able to pay it," except by a sale of property. To which said Alfred answered, "that *they* did not want them [the oxen], and had no use for them. Defendant then stated that he would sell them to some one else; to which witness [Alfred Colquitt] replied, that he supposed it would be all right, if *they* got *their* money." Another witness, who was present, testified, that defendant told Alfred Colquitt he wanted to sell the oxen, because he could get more for them than Colquitt could by selling under the mortgage. It was after this that defendant took the oxen into another county, and negotiated for a sale of them there; and Alfred Colquitt, following after, brought them back, and sold them under the mortgage at Bullock. Alfred Colquitt testified, at the trial of this cause, that he had no authority from Calvin C., to give permission to defendant to sell the oxen.

Now, unless defendant removed the oxen, or concealed or sold them, "for the purpose of hindering, delaying, or de-

[Gray v. The State.]

frauding Calvin C. Colquitt," he was not guilty of the offense he was charged with. The mortgage covered other property besides the oxen, to-wit, a cow and calf, a mare eleven years old, " five head " of other cattle, and forty acres of land ; which latter defendant returned to, and lived on, after he had removed and sold the oxen. And if it was to save this property, or some of it, by paying the mortgage debt, wholly or in part, by the proceeds of the sale of the oxen, that he took them into another county to sell them, he ought to have been allowed to show that Alfred Colquitt was so apparently the general agent of Calvin C., that he, defendant, might in good faith suppose that, in all that the former did and said about the mortgage debt and property, and in all that was said to him about it, Alfred Colquitt represented and acted for Calvin C. Colquitt. The former used the plural number as if speaking for Calvin C., as well as himself.

" Defendant proved by several witnesses, that his general character for honesty was good in his neighborhood." Yet the jury may have supposed that, because Alfred Colquitt testified that he had no authority from Calvin C., to give permission to defendant to sell the oxen, defendant must be guilty, for having undertaken to do so. But, if the removal of the oxen out of the county was not made by the defendant for the purpose of hindering, delaying, or defrauding Calvin C. Colquitt, but to enable defendant to raise money to by or partially pay the mortgage debt, and he had just reasons for believing, and did believe, he had the consent of his mortgagee, through Alfred Colquitt, to dispose of them for that purpose, he should not be found guilty under the indictment in this cause. The evidence excluded was relevant, and may have been useful in establishing this defense.

Let the judgment be reversed, and the cause remanded.