# Jackson v. The State.

## Murder.

(Decided June 9, 1910.   52 South. 835.)

1. *Homicide; Evidence.*—Where the prosecution was for murder alleged to have been committed by defendant and other striking miners by dynamiting house No. 158, in which decedent was, a witness, a non-striking employe, who knew the defendant was competent to state whether the defendant lived in house No. 159, next to 158, before he moved off the company's premises.

2. *Same; Res Gestae.*—Where the evidence tended to show that a number of the company's houses were blown up at the same time

[Jackson v. The State.]

by the same person as a part of a common design, and the prosecution was based upon the blowing up of the house 158 in which decedent was, alleged to have been blown up by the defendant and other striking miners, a witness who testified that he went to the houses that were blown up and that persons were then living in all the houses, including 158, such witness could testify as part of the res gestae that persons were injured in the other houses.

3. *Same; Silence in Face of Accusation.*—The officer who arrested the defendant under a charge of dynamiting a certain house in which decedent was could testify that immediately after the arrest he called defendant's attention to the condition of his pants and told him that he had done what he said he was going to do and what they had him in jail for threatening to do; that his pants were wet at the knees and showed that he had been out in the grass, and that he was the guilty party, and to which defendant made no reply, though not under restraint at the time, on the theory that where one accused of guilt remained silent when he has an opportunity to deny the allegation, is admissible as a circumstance tending to show guilt.

4. *Same; Objection in Lower Court.*—A general objection to a question to a witness whether another who was arrested with the defendant, on the charge of dynamiting a certain house in which decedent was, made any statement in the defendant's presence, the answer to which was, that in the presence of the defendant it was stated that defendant and several others were with the crowd who left the striking miner's tent the night before the dynamiting and came back thereafter, was properly overruled, since the question was capable of eliciting competent evidence, and no motion was made to exclude the answer.

5. *Same; Confessions; Laying Predicate.*—A proper predicate for proving confession was laid when the witness was asked if accused with defendant, about an hour or two after the dynamiting, as persons were passing, did not make a statement as to the dynamiting, and answered that he did, and that such statement was voluntary, and it was then competent to ask the witness what the defendant said and did at the time.

6. *Same; Res Gestae.*—Where the prosecution was for murder alleged to have been committed by accused and other striking miners by dynamiting a house in which decedent was, a witness who testified that after he heard the explosion, he also heard pistol and gun shots in the direction where the last explosion occurred, could be asked if he could tell from the sound whether they were pistol or gun shots or both, as the question calls for evidence within the res gestae.

7. *Same; Certainty.*—A sheriff who knew accused could be asked as to a conversation between accused and other persons who were in one cell in the jail on a certain night after they had been arrested for a homicide resulting from the dynamiting of a house, and at a time when they did not know that the sheriff was present, in which conversation the sheriff was sure that he recognized the defendant's voice, the questions asked calling for admissions or statements made by others in the defendant's presence tending to implicate the defendant in the crime charged and it was competent for such witness to answer that the defendant said that they must

stick together, and that another said when they got out they would go right back, and another stated that it would be just like some of the negroes implicated to turn state's evidence, and accused said that if he ever got into anything else he did not want such a big crowd; it was for the jury to determine whether or not it was accused's voice, and as to the weight of the evidence.

8. *Same; Admissions.*—A statement by one charged with homicide committed by dynamiting a house that if he ever got into anything else he did not want such a big crowd was an implied admission that he participated in the crime charged.

9. *Same; Evidence.*—Where a witness answered that he went as a deputy sheriff to the tent where accused was could be asked who else was in the tent with the defendant, since such evidence tended to show that the defendant and another jointly indicted with him had been together at the time and place of the dynamiting, and that each was dressed in a particular way at that time, and was still so dressed; the charge being that accused and others dynamited a house in which decedent was.

10. *Same.*—Where the state's theory was that the defendant and others arrested at that time were co-conspirators in dynamiting the house in which decedent was, and that on the night of the dynamiting they went through wet grass and dew, it was permissible to show that their shoes were wet and that their pantaloons were wet up to ther knees when arrested shortly after the dynamiting.

11. *Appeal and Error; Review.*—Where a question could not have been answered by competent evidence, the court will not be put in error for overruling a general objection.

12. *Trial; Reception of Evidence; Rebuttal.*—Where the defendant's witnesses stated who was at the place at the time the defendant was arrested, and named the defendant and another, the state on rebuttal could inquire into the same matter.

13. *Same; Time of Offering.*—A trial court, can, in its discretion, allow additional evidence concerning a matter already testified to by a state witness before the state first rested its case.

14. *Same; Reception of Evidence.*—It is usually the better practise to require the state to offer all its evidence upon a given matter in making out its case in the first instance, but it is within the discretion of the trial court to permit it to be done afterwards.

15. *Same; Rebuttal; Scope.*—Where defendant denied remaining silent when charged with the commission of the crime, it was competent for the state to offer evidence in rebuttal, tending to show the contrary, since the state may offer evidence rebutting evidence offered by the defendant.

16. *Jury; Summoning; Officers; Disqualification.*—It is not contrary to the official duties of the sheriff to assist actively in working up evidence against a defendant, and hence, his doing so does not disqualify him from summoning jurors to try the case.

17. *Witnesses; Examination; Re-direct.*—Where a state witness was asked on cross examination if he did not meet and converse with some persons while he was going through the camps where the explosion occurred, who told him that the strikers had gone towards the dago stand, could be asked on re-direct examination what such

[Jackson v. The State.]

persons told witness as to the way the people ran, so long as he confined himself to the same conversation about which the defendant had inquired; the state being entitled to have the witness state the whole of the conversation where the defendant had brought out a part of it.

APPEAL from Shelby Circuit Court.

Heard before Hon. JOHN PELHAM.

Ed Jackson was convicted of murder in the first degree and he appeals. Affirmed.

FRANK S. WHITE & SONS, and PETERS & WALLACE, for appellant. No brief came to the Reporter.

ALEXANDER M. GARBER, Attorney General, and BORDEN H. BURR, Solicitor, for the State.

EVANS, J.—The defendant was indicted and tried for the murder of James Wright. He was convicted of murder in the first degree and sentenced to imprisonment in the penitentiary for life. The undisputed evidence showed that the said James Wright was killed in Acton, Shelby county, in house No. 158. This house belonged to the Alabama Fuel & Iron Company, a corporation. Dynamite was exploded under this house (No. 158) and as a result thereof the said James Wright was killed. He and a man by the name of Tom Hudson were asleep in the house at the time of the explosion. There was, at the time, a strike among the union labor employes of the said Alabama Fuel & Iron Company, and defendant was vice president of the union. Defendant was jointly indicted with seven others. The theory of the state was that the murder was the result of a conspiracy of defendant and several others. The evidence connecting defendant with the crime was circumstantial except that tending to show his confession. On the trial the only exceptions reserved were to the rulings of the court on the admission of evidence.

The boy James Wright and the man Tom Hudson refused to go out on the strike and were, at the time, in the employ of said Alabama Fuel & Iron Company. The defendant had worked with said company before he went out on the strike. House No. 159 was next to and very near house No. 158. Among other things state's witness, Tom Hudson, testified that he knew defendant, Ed Jackson—he worked there and went out on the strike. State then asked the following question: "Had he lived at number 159—had he lived at house number 159 before he moved out of the company's house and off their property?" Defendant objected to the question, the court overruled the objection, and defendant duly excepted. The court was without error in its ruling as the question called for matter entirely relevant and proper, as tending to show that defendant was familiar with the location where the crime was committed, having lived in the adjoining house.

Dr. Strock, a witness for the state, testified among other things that he went to two houses that were blown up; that the house where the boy was killed was No. 158; that persons were living in all of the houses at the time. The state then asked the question: "Were there any other persons injured in the other houses?" Defendant objected to the question; the court overruled the objection, and defendant excepted. Witness answered, "Yes," and defendant moved to exclude the answer. The court overruled the motion to exclude, and defendant duly excepted. In the light of the evidence which tended to show that the blowing up of all the houses was done upon the same occasion, by the same persons, and was all part of a common design, the ruling of the court was proper. Upon this theory of the case, the matter testified to was part of the res gestæ.

On examination of W. F. Fallon, a witness for the state, he stated among other things: "I arrested Ed Jackson and General Lee and handcuffed them together, and arrested them for the dynamiting that had killed the boy." The state then asked the witness if he (witness) made any statement in the presence of Ed Jackson, the defendant, at the time in reference to the dynamiting. The witness stated that he did. Thereupon the solicitor asked him if at the time any threats were made toward Ed Jackson, any force used of any kind against him, any hope of reward or inducement held out to him, or any fear of punishment of any kind extended to him. Witness stated there was not. Thereupon witness was asked to state what he said to Ed Jackson in connection with the dynamiting for which he had him under arrest. Defendant objected to this question and duly excepted to the court's overruling his objection. The witness answered as follows: "I called his attention to the condition of his pants, and I said, 'Well, E'd, you have done what you said you were going to do, and what we had you in jail for making threats to do. Look at your pants there, they are wet to your knees, and show that you have been out in this grass, and shows that you are guilty. It looks as if you had just come in.'" The state then asked the witness. "Did he make any reply or say anything to this accusation?" The defendant objected to the question; the court overruled the objection, and the defendant duly excepted to the action of the court. The witness responded "He did not state anything at all, just stood mum." As is said in Bishop on Criminal Procedure, vel non. 1 (3d Ed.) § 1254. "Where one, in the presence of the accused, makes a declaration involving or implying his guilt, and there is opportunity for reply, and the surroundings and

persons are such as render it ordinarily expedient and proper, yet he remains silent, the entire fact may be shown with the other evidence to the jury. The weight of such fact will vary with the circumstances." Or as stated in 12 Cyc. on page 421, "Where, on being accused of crime, with full liberty to speak, one remains silent, his failure to reply or deny is relevant as tending to show his guilt. His silence alone, however, raises no legal presumption of guilt. Its effect is for the jury; and from it, in connection with other facts and circumstances, they may infer that he is guilty." From a consideration of the foregoing authorities, we hold that the court properly ruled in admitting the evidence. But the evidence being admissible the weight to be given it was for the jury to determine.

The state asked the said witness W. F. Fallon if Will McDade, who was shown to have been one of the parties arrested for this dynamiting, made any statement in the presence of defendant. Witnesses stated that he did. Thereupon the state asked the witness to state what was said by McDade in the presence of defendant at this time. The defendant objected, the court overruled the objection, and defendant excepted to the ruling of the court. The witness answered that "Will McDade stated in the presence of defendant that he, Ed Jackson (the defendant), and several others, whom he pointed out and named, were with the crowd that left the striking miners' tents that night before the explosion and came back after the explosion." There was no motion to exclude this answer, and as the question was capable of eliciting evidence both competent and legal, the court will not be held in error for overruling the general objection to the question. If the answer was, for any legal reason, objectionable, the de-

[Jackson v. The State.]

fendant could have moved to exclude it, and thereby
have protected himself from the effects of it.

The same criticism is applicable in the following,
which was asked the same witness. Witness was then
asked if, an hour or two after the time, the defendant,
Ed Jackson, made a statement in reference to the dyna-
miting in front of Walker's store as the men were going
along, and witness answered that he did. The state
then asked the witness if the statements there made or
what was there done by Jackson were said and done by
him without any force or threats of any kind being used,
or without any reward or hope of reward or induce-
ments of any kind being held out or offered to him, and
if the statements were voluntary, and witness replied
that no threats or force were used, or reward or hope of
reward or inducements held out, and that the state-
ments were voluntary. State then asked witness what
defendant, Ed Jackson, said and did on the occasion in
front of Walker's store. The defendant objected to the
question, the court overruled the objection, and defend-
ant excepted to the ruling of the court. The above
questions and answers laid a proper predicate to prove
a confession by defendant and the question asked could
have been answered by stating a confession. The court
therefore was without error in overruling a general ob-
jection. No motion was made to exclude the answer,
and therefore it need not be considered.

On cross-examination of this witness, defendant ask-
ed him if, while he was going through the camps where
the explosion occurred, he did not meet some parties,
and did not have a conversation with them, in which
they told him that the parties who did the striking had
gone toward the camps of the Dagos. On redirect ex-
amination the state asked the same witness the follow-
ing question: "Now I will ask you to tell the jury

what those parties did tell you in reference to the way the people ran, confining yourself to the same conversation the defendant asked you about." The defendant objected to the question, the court overruled the objection, and defendant excepted. The defendant having called for a part of the conversation, the state was entitled to have the witness state the whole conversation. —*German v. Brown,* 145 Ala. 364, 39 South. 742; *Drake v. State,* 110 Ala. 9, 20 South. 450; *Dodson v. State,* 86 Ala. 60, 5 South. 485; *Williams (Hudson) v. State,* 137 Ala. 60, 34 South. 854. The same witness for the state further testified on redirect examination that "after he heard the explosion in the negro quarter he heard pistol shots and gun shots going off in the direction where the last explosion occurred." The state asked the witness if he could tell from the sound whether or not they were pistol or gun shots or both. To this question the defendant objected, the court overruled the objection and defendant reserved an exception to the ruling of the court. The question was properly allowed as it called for evidence of a part of the res gestæ— what was done on the occasion and with what.

J. H. Fulton, witness for the state, who was sheriff of the county testified that he knew the defendant, Ed Jackson; that he had been in jail some time; that the negroes arrested for the offense for which defendant was on trial were all in one cell in the jail; no one made any threats against defendant or any of the negroes in the cell. It was night, and witness heard a conversation which took place between them; he being in the dark, and they not knowing he was present. The state then asked the witness to state what was said in said conversation. To this question defendant objected, the court overruled the objection, and the defendant duly excepted. The question was such as could well be an-

swered by stating admissions made by him of facts tend-
ing to show his guilt, or by stating what others said in
his presence and hearing tending to implicate him in
the crime of which he was charged, to which he assent-
ed or did not deny. The court could not therefore be
held in error for overruling the objection. The wit-
ness had already stated that he knew Ed Jackson, hav-
ing had him in jail for some time. In response to the
question the witness stated: "A few seconds after I
stopped at the door some one spoke up, and my
judgment is that it was Ed Jackson," and stated "that
there is one thing damn certain, we have all got to stick
together," and some one else spoke up and said "Yes,
and when we get out of here we are going right back
there." Then General Lee (who was one of the inmates
of the cell jointly indicted with defendant) said "Its
going to be just like some of these negroes to turn
state' s evidence." Then Ed Jackson said, "If I ever
get into anything else, I don't want such a damn big
crowd." Witness stated that he was pretty positive
that it was Ed Jackson's voice, and that in his best
judgment it was Ed Jackson's voice, that he had known
Ed Jackson before this time, as he had been in jail be-
fore on another charge. Thereupon the defendant mov-
ed to rule out this evidence upon the ground that the
defendant was not sufficiently identified. The court
overruled the objection and defendant excepted. We
are of opinion that the ruling of the court was without
error. The witness having stated his knowledge of Ed
Jackson, that he was within five feet of him at the time
of the conversation, and that he was pretty positive that
it was Ed Jackson's voice, which was saying, "If I ever
get into anything else I don't want such a damn big
crowd," which was an implied admission that he was
one of the participants in the crime with which he was

charged, it became proper evidence to go to the jury and for them to determine whether it was Ed Jackson's voice and what weight they would give it in determining his guilt or innocence.

The same witness, J. H. Fulton, who was sheriff of the county, after testifying to matters showing that he was active in getting up the evidence against defendant, stated that he was the man who summoned the jurors to try the case. Defendant then asked him if he told the court anything about the part he was playing when he went out and summoned these men (jurors). The state objected to the question and the court sustained the objection, and defendant excepted to the ruling of the court. We do not think that the fact that a sheriff has been active in getting up the evidence against one charged with crime is contrary to the duties of his office, or in any way disqualified him for the summoning of jurors to try the case. It was his duty to summon them, and there was no duty resting on him to notify the court of what he had been doing with reference to getting up testimony. The objection was therefore properly sustained.

J. E. Bumgardner, a witness for the state, testified: "I am freight agent for the L. & N. Railroad Company at Acton. My office is in the adjoining room to the timekeeper. On the morning they had these negroes arrested and brought over here, I was in the room when General Lee, Ed Jackson, and Jos. Green were in there." Here the state asked the witness if he overheard the conversation that took place while Jos. Green was in there during the portion of the time Dr. Strock was in there; and if this was the only conversation in which Jos. Green took part in the office. Witness stated that it was, and that he was present during the whole conversation. The state then asked the witness to state

the whole of the conversation, stating only what occurred while Jos. Green was in there. The defendant objected to the question, the court overruled the objection and defendant excepted. The question could have been answered by competent, material, and relevant evidence, and the court will not be held in error for overruling the objection. The question was answered, and no motion was made to exclude the ancwer.

After defendant rested his case, the state introduced a witness, Chester Taylor, and asked him, "Did you go with Fallon as a deputy sheriff to the tent where Ed Jackson was?" Witness answered, "Yes, sir." The state then asked, "Who was in the tent with him?" Defendant objected to the question, the court overruled the objection and defendant excepted. This question was relevant and proper for the reason that there was evidence tending to show that defendant and General Lee had been together at the time and place of the crime, and that each was dressed in a particular way at the time of the dynamiting and was still so dressed. Besides the whole matter had been testified to by other witnesses. The defendant's witness, General Lee, had stated who was there at the time of the arrest, and named Ed Jackson and Henry Ross. The state, on rebuttal, had the right to inquire into the same matter. State asked witness to state whether or not he noticed Ed Jackson's pants when he went in. Defendant objected on the ground it was not in rebuttal, and the court overruled the objection and defendant excepted. It was within the discretion of the trial court to allow additional evidence of a matter which had already been testified to, by witnesses for the state, before the state first rested its case. State asked the witness, "Did you notice the condition of the pants and shoes of the others you arrested?" There was objection to this ques-

[Jackson v. The State.]

tion by defendant, court overruled the objection, and defendant excepted. It was the theory of the state that all who were arrested were co-conspirators and participated in the crime; that in going to the places they went to that night, they went through grass wet with dew; and it was competent to show, in connection with the other evidence offered in the case, that as a fact, when arrested a short while after the dynamiting, their shoes were wet and their pants wet up to the knees. It was competent for the state on rebuttal, after defendant, Ed Jackson, had denied remaining silent when accused of the crime, to offer evidence tending to show the contrary. It is usually the better practice, when practicable, to require the state to offer all of its evidence upon a matter testified to by its witnesses in making out its case in the first instance but, if it does not, it is within the discretion of the trial court to allow it afterwards.

All the other questions raised by objection to the introduction of testimony by the state, were to testimony offered strictly in rebuttal to testimony that had been introduced by the defendant, and the court was without error in overruling the objections thereto.

There being no error committed by the trial court, the case is affirmed.

Affirmed.

SIMPSON, McCLELLAN, and MAYFIELD, JJ., concur.