[Crim. No. 339.   Third Appellate District.—June 22, 1916.]

## THE PEOPLE, Respondent, v. ALBERT FRANCIS FERRARA, Appellant.

CRIMINAL LAW—ROBBERY—EVIDENCE—REGISTRATION AT HOTEL UNDER OTHER THAN TRUE NAME—VERBAL PROOF BY WITNESS.—In a prosecution for the crime of robbery, it is not error to permit a witness, who went with the defendant on the night of the commission of the crime to an adjoining town, to testify that they went to a hotel and that the defendant registered under a name other than his true name.

ID.—STATEMENTS OF DEFENDANT AT PRELIMINARY EXAMINATION— PROOF BY REPORTER—REFERENCE TO NOTES NOT FILED.—In such a prosecution there is no error in allowing the phonographic reporter who acted at the preliminary examination to refer to his original notes to enable him to testify as to certain statements made by the defendant at such hearing, notwithstanding such notes had not been filed.

ID. — CONTRADICTORY TESTIMONY — CONSIDERATION BY JURY—INSTRUCTION.—An instruction that contradictory testimony is admissible only for the purpose of impeaching the credibility of a witness and that the jury might not consider it as evidence of the truth of such statements, is properly refused.

ID.—GUILT OF DEFENDANT—TAKING OF PROPERTY BY FORCE AND FEAR— USE OF DISJUNCTIVE—INSTRUCTION.—An instruction that if the jury found that the taking of the money was accomplished by means of "force or fear," they could find a verdict of guilty, is not erroneous, notwithstanding that the information charged that the taking was accomplished by means of force *and* fear.

31 Cal. App.—1

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

Cross & Lynch, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

ELLISON, J., *pro tem.*—The defendant has been convicted of the crime of robbery and sentenced to imprisonment for the term of fifteen years. He prosecutes this appeal from the judgment and order denying his motion for a new trial.

In view of the youth of the defendant and the judgment rendered the record has been examined with great care, the result of which is that no reversible error has been found. In fact, the trial seems to have been conducted with unusual care and regard for the defendant's rights. Many points are made by appellant for a reversal, and they will be given such consideration as seems proper.

It is claimed that the *corpus delicti* was not proved. A brief narrative of the salient facts of the case will show that this position is not well taken.

The prosecuting witness, Duffy, came from Merced to Stockton on the afternoon of the second day of September, 1915, arriving there about 4 o'clock, and went to a saloon kept by a man named Grohmans. There he met the defendant and they had several drinks. At about 4:30 P. M. Duffy, in company with the defendant, left the saloon and went to the boat landing for the purpose of taking a boat to San Francisco. The defendant bought a boat ticket for himself and one for Duffy. The officers at the boat landing refused to let Duffy go on the boat because of his intoxicated condition and took up his ticket, returning to him the price thereof, one dollar. The two then returned to the Grohmans saloon and were there informed that a Southern Pacific trian would leave for San Francisco at about 7 o'clock. The two walked to the Southern Pacific depot and when they reached it learned that the train they expected to take had gone; they were told that a Santa Fe train would leave at about 8:30. The

defendant told Duffy he knew the way to the Santa Fe depot and they started to walk there, the defendant taking the lead. When they were within about 150 yards of the Santa Fe depot the defendant said: "Give me a smoke." While sitting there on the side of the railroad track, smoking, a man came along with a lantern and the defendant asked him what time the train would leave and defendant told Duffy he said about 9 o'clock. (It seems Duffy is somewhat deaf.) Shortly after this man left the defendant attracted Duffy's attention to something up the track and when Duffy turned his head the defendant struck him just back of the ear. Duffy jumped up and the defendant struck him again between the eyes and once on the hand. After Duffy had been thus struck he felt "everything going—everything kind of commenced to get dark for me." Duffy testified that after this he had a faint recollection of defendant going through his pockets. After some time Duffy regained consciousness and managed, after several efforts, to get to his feet. The defendant was gone and Duffy did not see him again until after his arrest. Duffy testified that when he was struck by the defendant he had in his pocket about $28; that when he came to his money was all gone—there was none in his pockets. He testified that just before he left Modesto he got two checks which he cashed, one for $30 and one for $12.50, and then detailed, as best he could, what he spent from that time until he was struck, and figured he had about $28 left. There was much other testimony in the case, among which were statements of the defendant to the officers, which were manifestly false, but the above recital is sufficient for the purpose of noticing the points relied upon for a reversal.

It is claimed that the proof is insufficient to show that the money alleged to have been taken was the property of the complaining witness. But the evidence that Duffy got two checks in Modesto, had them cashed, and that the money in his pocket at the time he was struck was a part of the proceeds of these checks, is sufficient to show that the money was his property.

The evidence is amply sufficient to justify the jury in finding that it was taken from his person by force or fear. The evidence was sufficient to justify a conviction of the defendant. It is claimed that certain statements of the accused were given in evidence before the *corpus delicti* had been

proved. None was admitted before the complaining witness had testified to the facts above recited.

It is claimed that the court erred in allowing verbal proof of the contents of a certain hotel register. A witness, James Farley, testified that on the night of the alleged robbery the defendant went with him in an auto to the town of Tracy. He testified that at the hotel in Tracy to which they went and spent the night the defendant wrote something on the hotel register. He did not write the name Ferrara, but witness did not know what name he did write. This testimony was objected to on the ground that the hotel register was the best evidence of its contents. The witness was testifying to an act of the defendant witnessed by him. The witness did not know what particular name he signed on the register, and it was immaterial. The material thing was that he signed a name other than his own or, to put it another way, that he registered but did not write his own name. We think this was primary evidence of the fact and that the act was material.

Nor was there any error in allowing in evidence the statements of third persons. The record shows that witness Corlett, over objection, testified that when prosecuting witness and defendant were standing at the bar, close together, defendant stated that he had a couple of packages—was going away on the train—but did not know where they were located. Witness told defendant to "go down the street and see if you can locate the packages," and defendant said "all right. So they went together and come back with the packages." We see nothing in this of which the defendant can complain. He heard the conversation and statements and acted upon them.

During the trial the phonographic reporter, who acted as such at the preliminary examination, was sworn and asked if the defendant at such hearing made certain statements, and to enable him to answer was requested to and did get his original notes of such examination. Objection was made to the use of the notes upon the ground that "they had not been filed." The reporter was directed to file his notes and the objection was overruled. In this we perceive no error. The witness was present at the examination and made notes of the testimony, and was using them as a basis for the testimony he was giving. He had a right to refresh his memory

from such notes, and if he had no independent recollection of what the defendant testified to, he could read his notes of the testimony. In thus using his notes he stood in no different position from any other person who might have been present and made notes of what the defendant said. (Code Civ. Proc., sec. 2047.) If it had been sought to use the transcript of the notes as a deposition, the questions raised by counsel might require fuller consideration.

It was not necessary to fix time, place, and circumstances of alleged statements made by defendant by questioning him thereon before proving such statements. His declarations and statements were original evidence against him, and the rules as to impeachment of witnesses did not apply.

The court refused to give the following instruction asked by the defendant: "The jury is instructed that contradictory testimony is admissible only for the purpose of impeaching the credibility of the witness, and you may not consider it as evidence of the truth of such statements." This instruction was properly refused. The evidence of the prosecuting witness (to illustrate) was contradictory of the testimony of the defendant, but it was evidence of the truth of the facts he testified to and was to be so considered by the jury. Counsel evidently had in mind the rule as to proof of statements made by a witness at other times contradicting his testimony given at the trial. If so, he was unfortunate in expressing the rule.

The court instructed the jury that they could find a verdict of guilty if the taking of the money was "accomplished by means of force *or* fear used upon or against the said John Duffy by the said defendant, or by said defendant putting said John Duffy in fear." Counsel claim that the instruction was erroneous, in that it used the disjunctive "or" instead of the conjunctive "and" between the words "force" and "fear." The instruction as to this feature of it is in the language of the statute (Pen. Code, sec. 211), wherein it is provided: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force *or* fear." But, while the statute is thus worded, counsel takes the position that as the information alleged that the taking was accomplished by means of force *and* fear, "force and fear" were words descriptive of the manner in which the offense was committed and had to be proved as alleged. The instruction

as given was a correct statement of the law, and while it was alleged that *fear and force* were the means used, the offense was complete if either was proved as the means by which the taking was accomplished.

We find no error in the record and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 22, 1916, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 21, 1916.