88 So.2d 347

**Tom BLACKWELL**

v.

**STATE.**

**2 Div. 356.**

Supreme Court of Alabama.

May 24, 1956.

Rehearing Denied June 30, 1956.

Pitts & Pitts, Selma, Beddow, Gwin & Embry and Roderick Beddow, Jr., Birmingham, for appellant.

John Patterson, Atty. Gen., and Robt. Straub and Robt. G. Kilgore, Jr., Asst. Attys. Gen., for the State.

**MERRILL, Justice.**

Appellant was tried under an indictment charging first degree murder, was found guilty of second degree murder and sentenced to 25 years imprisonment. His motion for a new trial was overruled and he appealed.

The evidence discloses that around 12:01 a. m. on the morning of January 1, 1955, the deceased, Clarence Chester and his brother James (also deceased) were present at the Embassy Club, located about two miles from Selma, along with a crowd of 100 or so persons including the appellant, Tom Blackwell, and his brother Mickey. James Chester and Mickey Blackwell got into a fight; the deceased and the appellant joined in a general melee which lasted some 15–25 minutes. At the conclusion of the melee, both Chesters left the club; appellant and Mickey followed a few seconds later. All of the parties had been drinking. Shortly thereafter both Chesters were observed lying on the ground in front of the club, motionless, and clasped in an embrace. Appellant and his brother, along with the witness Travis, went to appellant's car and got in. With appellant at the wheel, the car backed out of its parking place and proceeded forward toward the point where the Chesters were lying on the ground. Other cars were leaving at the time and it was raining. The left front wheel of appellant's car passed over the bodies of both Chesters, the frame of the car pinning them under it. The car was equipped with lowering blocks, the effect of which is to lower the rear end of the car. Both Chesters were dead when removed from under the car some 15 minutes later. According to Dr. Rehling, State Toxicologist, deceased died of asphyxiation caused by great force or pressure being applied to the neck and upper portion of the chest cavity which obstructed blood circulation and breathing by pressure at this point.

State witness Travis testified that when they arrived at the car from the club, appellant said, "We will fix those bastards"; that just before they ran over the bodies, someone yelled, "don't run over them boys"; that when the car came to a stop, someone came up to the car and said "you ran over those boys," at which time appellant said that was what he meant to do and if the man did not shut up the appellant would stomp his ass; that he (Travis) got out of the car, felt for the pulse of the deceased, found none, got back in the car and informed appellant that deceased was dead, and after they were transferred to the automobile of the officers, that appellant said over and over, "we will get twenty to twenty-five years for it". State's witness Wackerle testified that he was the person who shouted, "stop, stop, don't run over them" when the car was about twelve feet from the deceased and he corroborated substantially the third and fourth statements testified to by Travis. The defendant denied each of these statements except that someone yelled about the time he felt his wheels hit a bump and he brought the car to a halt. He testified that he never saw the Chesters on the ground and did not know he had run over them until the car was resting on their bodies. He further testified that his brother and Travis were on the front seat with him, that he was not drunk, that he remembered everything that took place outside and that he was in charge of his faculties.

Appellant urges that the court erred in that on rebuttal, after the defendant had testified, the state called the witness Baker, who stated that he had a conversation with the defendant after his arrest. The predicate as to the voluntariness of this statement was properly laid. After the question, "what was said in that conversation?", the defendant objected as follows:

"We object. It calls for incompetent, irrelevant, immaterial and illegal testimony; no proper predicate has been laid to authorize the witness to answer the question; no proper foundation has been laid; and the question is not asked in the language of any predicate; and it is not offered to dispute any evidence or anything testified to by the defendant; nor is it offered to impeach any witness offered in behalf of the defendant; and on the further ground if he has any statement in the nature of an admission on the part of the defendant, it should have been offered on the. State's direct proof and not on redirect."

The objection was overruled; defendant excepted and the witness testified:

"I was asking Tom, asking some several questions about particular incidents at the Embassy Club. I asked Tom if—I think my first questions were related to the fight inside the place— I asked him if he started the fight; he said, 'I don't know who started the fight; maybe I did.' I asked specific questions about things that took place outside the place; his answers were, 'I don't know. I don't remember. I was too drunk.' I asked him the specific question if he saw the man who tried to stop him before he got to the bodies. He said, 'I don't know.' I asked some other specific questions about, about the bump, if he felt the bump as he passed over the bodies. He said, 'I don't know.' I asked him the specific question who was on the front seat of the car with him. He told me,

'I don't remember.' He said he was too drunk, he couldn't remember."

These statements attributed to the defendant were inculpatory in part and exculpatory in part, but since no effort was made to have any particular part excluded, we shall proceed to treat the answer as though it were an inculpatory admission against interest in all respects, since it was an admission against interest in some respects. The questioned testimony of Baker relative to what the defendant said regarding his being drunk and not remembering is almost identical with that of officer Tompkins in Elkins v. State, 250 Ala. 672, 35 So.2d 693, where it was held that such statement was in the nature of an inculpatory admission.

■ Appellant insists that Baker's testimony was inadmissible because the proper impeachment predicate was not laid to the defendant when he was on the witness stand. The established rule was restated in our recent case of Sparks v. State, 261 Ala. 2, 75 So.2d 103, 106, as follows:

"The rule is well settled that where a witness on cross-examination denies that he made a statement out of court contrary to his testimony on direct examination, it cannot be shown by an impeaching witness over proper objection that the witness to be impeached did make such a statement out of court unless on cross-examination of the witness to be impeached his attention was called with reasonable certainty to the time, place, circumstances, persons involved, and the statement alleged to have been made by him out of court. (Citing cases.)"

■ Every case cited in appellant's brief is one like the Sparks case, supra, where the witness sought to be impeached was not the accused. When the accused takes the stand to testify in his own behalf, he does so in a dual capacity—(1) as the accused and (2) as a witness; Chambers v. State, Ala., 84 So.2d 342, 343 [1]. There are

1. Ante, p. 8.

instances when the impeachment predicate must be laid to the defendant when he is testifying; e. g., by proof of prior contradictory statements not admissible as confessions because not shown to have been voluntarily made. Smith v. State, 137 Ala. 22, 34 So. 396; Brown v. State, 243 Ala. 529, 10 So.2d 855; Alberson v. State, 254 Ala. 87, 47 So.2d 182. Another example is the case of Slaton v. State, 21 Ala.App. 422, 109 So. 118, 119, where "The defendant, when being examined as a witness, testified that the still was owned by a man named Poe, who was then dead. It was proper to allow the state to prove that at the time the defendant was arrested he made the statement that Poe had nothing to do with the still. This tended to impeach the witness on a material point."

■ The general rule in this state relative to an accused is that "the acts, declarations and conduct of the accused, against interest, are always competent." Woodard v. State, 253 Ala. 259, 44 So.2d 241, 245; Hill v. State, 194 Ala. 11, 69 So. 941, 2 A.L.R. 509, and among the reasons why this is so insofar as declarations are concerned is that "all that the accused voluntarily wrote or said which is material to the charge, is competent against him because it is his own admission and against his own interest". Elkins v. State, supra [250 Ala. 672, 35 So.2d 695].

In 2 Wharton's Criminal Evidence (12th Edition 1955) Section 397, we read:

"Admissions are admissible although they contain exculpatory matter.

"An admission is substantive evidence. It is therefore not necessary that a foundation for the introduction of an admission against the interest of the accused be laid by asking him whether or not he made the statement."

In IV Wigmore on Evidence, Third Edition, Sec. 1051, p. 8, we find: "The rule requiring that the witness must have been *warned when on the stand,* and asked whether he had made the statement about to be offered as a self-contradiction (ante, §§ 1025 ff.), has always been understood not to be applicable to the use of a party's admissions, i. e., they may be offered *without a prior warning to the party."*

Other authorities say:

"Statements and declarations by accused, before or after the commission of the crime, although not amounting to a confession, but from which, in connection with other evidence or surrounding circumstances, an inference of guilt may be drawn, are admissible against him as admissions. Such statements and declarations are original evidence and may be introduced without laying the foundation which is necessary when it is sought to impeach a witness". 16 C.J. Criminal Law, Sec. 1243, p. 626; 22 C.J.S., Criminal Law, § 730.

"In laying a predicate for the admission of a confession, it is proper for the prosecution, as a preliminary question, to inquire whether a confession was made. The time and place of the making of the confession, and the persons present, however, need not be established, the rule as to the foundation necessary when it is sought to impeach a witness being inapplicable." 22 C.J.S., Criminal Law, § 817, p, 1438.

"It is clear that admissions and declarations may be proved by a person other than the one who made them. * * * It is not essential to call the declarant's attention to the statement or to lay a foundation for its introduction, except such as may be necessary to show that it is relevant and material." 20 Am.Jur., Evidence, Sec. 549, p. 463.

A case in point is Roney v. State, 167 Miss. 827, 150 So. 774, 775, where the court said:

"Appellant complains of this evidence on two grounds: First, that no predicate was laid therefor; and, second, that the evidence was not properly rebuttal, but should have been introduced by the state before it closed its case in chief. As to the first ground, appellant overlooks the fact that the rule requiring the laying of a foundation or predicate for the introduction of evidence of admissions is operative

only when it is sought thereby to impeach a witness other than a party to the litigation, and does not apply when the admission is one made by the party himself. 1 Ency. Ev. 610; 16 C.J. 626, 627."

See also: Roberts v. State, 2 Boyce 385, 25 Del. 385, 79 A. 396; State v. Forsythe, 99 Iowa 1, 68 N.W. 446; Belt v. State, 103 Ga. 12, 29 S.E. 451; State v. Wertz, 191 Mo. 569, 90 S.W. 838; State v. Allen, 34 Mont. 403, 87 P. 177; State v. Green, 158 Wash. 574, 291 P. 728; State v. Freeman, 43 S.C. 105, 20 S.E. 974; People v. Ferrara, 31 Cal.App. 1, 159 P. 621; Keffer v. State, 12 Wyo. 49, 73 P. 556; State v. McDermott, 52 Idaho 602, 17 P.2d 343; Oney v. Commonwealth, 225 Ky. 590, 9 S.W.2d 723; People v. Griswold, 405 Ill. 533, 92 N.E.2d 91; Wooten v. State, 220 Ark. 750, 249 S.W.2d 964; State v. Johnson, 69 Ariz. 203, 211 P.2d 469; City of Middletown v. Dennis, Ohio Mun., 120 N.E.2d 903.

The Alabama case most nearly in point is King v. State, 24 Ala.App. 267, 134 So. 133, 135. The court there considered the necessity of an impeachment predicate to a witness and admissions of the defendant. Respecting the latter, it was said:

"Inculpatory statements made by a defendant after the commission of an act charged as a crime are only admissible in evidence after proper predicate has been laid showing that such statement, admissions, or confessions are voluntary. When shown to be voluntary, such confessions and admissions may be shown independently of any denial by defendant. * * * The admission of this testimony did not depend upon a predicate for impeachment, but a predicate to show its voluntary nature should have been laid."

Of similar import is the civil case of Hesk v. Ellis, 200 Ala. 17, 75 So. 329, 330, when the court said: "The witness Hesk was therefore not a party to the cause on trial, and was not impeachable, as parties are, by proof of inconsistent statements without a proper predicate laid giving him an opportunity to admit, deny, or explain the statement assailed." Civil cases from other jurisdictions holding the same are listed in notes to the citations from Wigmore on Evidence, C.J., C.J.S., and Am.Jur. supra.

We think a reasonable and simple test to be applied to govern the admissibility of inculpatory admissions against interest is whether or not it could have been given in evidence if the defendant had not testified, or as stated in Eaton v. Commonwealth, 230 Ky. 250, 19 S.W.2d 218, 224:

"This admission by the defendant against his interest was direct substantive evidence against him, and (the witness) Smith could have been asked that question in chief before the defendant ever testified; in fact, could have been asked it regardless of whether the defendant testified or not."

Here Baker's testimony would have been admissible irrespective of whether the defendant had testified and the trial court properly admitted this evidence.

Prior to submission, the instant case was argued orally and appellant then cited the case of Wiggins v. State, 27 Ala.App. 451, 173 So. 890, in addition to those cited in brief. The applicable part of the opinion reads:

"When Lonnie Smith was being examined as a witness for the State, he was asked by the solicitor this question: 'I will ask you if Foster Wiggins testified or said at that time then when you came back to the car and said to him and Snowden that it was all a plotted piece of business, that he then got out of the car and said, you were a dam lie and knocked you down?' This question was asked for the purpose of impeaching the testimony of the witness Foster Wiggins, who testified in his own behalf and in behalf of the other defendants. No sufficient predicate was laid for the introduction of this evidence and, therefore, the action of the court in overruling defendant's objection was error. A witness cannot be impeached by proving a statement

different from the one sworn to on the trial, unless he has been examined as to his having made such statement. Atwell v. State, 63 Ala. 61. The above is the universal rule followed in this state in numerous cases cited in Vol. 19 Alabama Digest, Witnesses, ☞ 388(2)."

Because this holding seemed to be different from every other inference to be drawn from our cases and to be in conflict with the rule in most other jurisdictions, we examined the original record. The opinion is correct in stating that the question was asked for the sole purpose of impeaching the defendant Foster Wiggins, because these events happened sometime after the alleged robbery and larceny, at a different place, were not inculpatory admissions and were not pertinent to the issue of guilt and did not tend, in connection with proof of other facts to prove defendant Wiggins' guilt. But the opinion is incorrect in the statement that "no sufficient predicate was laid for the introduction of this evidence * * *". The bill of exceptions (p. 35) shows that after he had testified, the defendant Foster Wiggins, "being recalled on rebuttal, testified as follows on re-cross examination: ' "I did not tell Lonnie Smith that he was a God dam lie and then get out of the car and knock him down. I did not testify that on the preliminary hearing." '." As said in Terry v. State, 16 Ala.App. 430, 78 So. 460, "although the predicate question is not set out in the bill of exceptions, the answers show that it was properly laid." It was after Foster Wiggins had thus testified upon being recalled, that Lonnie Smith testified as set out in the opinion of the Court of Appeals. It therefore follows that the Wiggins case, supra, cannot be considered as authority for the proposition for which it was cited by appellant.

■ Appellant's next contention is that Baker's testimony "should have been offered on the State's direct proof" and not on rebuttal. We cannot agree. It is within the discretion of the trial court to receive, in rebuttal, testimony which more properly should have been offered as part of the case in chief. Jackson v. State, 167 Ala. 44, 52 So. 835; Lambert v. State, 208 Ala. 42, 93 So. 708; Payne v. State, 261 Ala. 397, 74 So.2d 630; Roney v. State, 167 Miss. 827, 150 So. 774; Berry v. Commonwealth, 227 Ky. 528, 13 S.W.2d 521. However, there is a strong inference in Delaney v. State, 204 Ala. 685, 87 So. 183, 184, that Baker's testimony was proper in rebuttal. It was there stated that the defendant's statements could be admissible "in rebuttal by the state to show a statement or statements, made on the occasion of these interviews or conversations, contradictory of any testimony given by the defendant on his trial."

The attorney general states in brief as a proposition of law that "conversations had by the defendant with a state witness in the nature of inculpatory admissions of collateral facts and not confessions of guilt are admissible in evidence without the necessity of laying a predicate", and cites many cases including Read v. State, 195 Ala. 671, 71 So. 96; Herring v. State, 242 Ala. 85, 5 So.2d 104; Tillison v. State, 248 Ala. 199, 27 So.2d 43. The proposition is correct and the cases support it, but they are not here applicable because they hold that no predicate as to voluntariness need be laid for such statements to be admissible, and they do not refer to the requirement that an impeachment predicate be laid as to time, place and circumstances. It will be recalled that in the instant case the predicate as to voluntariness was properly laid before the witness Baker testified as to the declarations of the defendant.

After arguing the question of the necessity of the predicate or foundation disposed of supra, appellant's brief cites thirteen instances in which it is argued that the questions asked by counsel for appellee, statements or arguments made by them to the judge or to the jury were so prejudicial to the appellant that a mistrial or a new trial should have been ordered.

The trial of this case began on Tuesday, May 24, 1955 and was concluded on Tuesday, May 31, 1955. It was hard fought and

bitterly contested on both sides. Based on remarks of the trial court to the jury, it must have been very hot in the courtroom. Counsel for appellant and counsel for appellee argued with each other, made many side remarks and used expressions which could better have been left unsaid, and which under less stress and strain would not have been uttered; and each side on one or more occasions asked questions of witnesses which were patently inadmissible and were obviously asked to get objectionable matter before the jury or to discredit the witness before the jury. In each instance the trial court sustained objections and instructed the jury to disregard and exclude from their minds the objectionable inferences or insinuations springing from the questions. Near the end of the trial the court reminded counsel of his authority to punish for contempt and that he was ready to use that authority.

We have not only examined each of the instances cited by appellant, but others in the record, and have discussed each in consultation. There is nothing new about them; they are typical of questions which have arisen many times in a trial which is vigorously prosecuted and just as vigorously defended. The case was tried carefully and patiently by Judge Moore and he was prompt to exclude inadmissible and objectionable matter. No good purpose would be served to identify and discuss each separate instance urged as error in brief. Suffice it to say that after a careful examination of each and the record as a whole, we find no reversible error relating thereto.

The evidence supported the verdict and the motion for a new trial was properly overruled. We fail to find error sufficient to effect a reversal in any other aspects of the record, even though not specifically urged in brief.

The judgment of the circuit court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.