THE BRANFORD TRUST COMPANY, ADMINISTRATOR, *vs.*
PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Third Judicial District, Bridgeport, April Term, 1925.
WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

In the present action upon a policy of life insurance, where recovery of the face of the policy depended upon whether the plaintiff's intestate had or had not committed suicide, the substantially undisputed evidence before the jury was to the effect that, after a hot summer night, he was found dead in his small bedroom; that the gas-jet, though in good repair, was fully turned on;

that the door and window, which he customarily left open for ventilation, were closed; that the cracks and keyhole were stuffed with clothing to prevent the escape of the fumes, and that letters written in a despondent spirit were found in the room. The only positive evidence offered by the plaintiff to contradict the inference of self-destruction was the testimony of several acquaintances that the decedent had appeared to them to possess a composed and cheerful state of mind. The jury found the issues for the plaintiff. *Held* that the trial court erred in refusing to set aside the verdict which, upon the evidence, was so unreasonable as to indicate that the jury were moved by partiality, prejudice or mistake.

When contradictory or inconsistent statements made by a witness out of court are admitted to impeach his credibility, their effect stops at that point; in themselves they have no probative or evidential value.

Where it is clearly the official duty of a medical examiner to incorporate in a death certificate his opinion, if he so concludes, that the death was suicidal, the certificate is admissible to prove the truth of the fact therein asserted; but the jury should be cautioned that such evidence merely represents the conclusion of the officer which they should not permit to take the place of their own.

It is well established in this State that duly-recorded birth certificates are admissible to prove the paternity of children.

Argued April 14th—decided June 1st, 1925.

ACTION to recover upon a policy of life insurance issued by the defendant upon the life of the plaintiff's intestate, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Booth, J.;* verdict and judgment for the plaintiff for $500, and appeal by the defendant. *Error.*

*Frederick W. Wiggin,* with whom, on the brief, was *Stephen F. Dunn,* for the appellant (defendant).

*William B. Ely* and *Louis B. Zacher,* for the appellee (plaintiff).

MALTBIE, J. The plaintiff brings this action as administrator upon the estate of Charles A. Doolittle, to

recover the full amount stipulated to be paid in a policy of life insurance issued to him by the defendant. The policy was dated September 25th, 1920, and contained the following provision: "If within one year from the date hereof the insured shall die by suicide—whether sane or insane—the liability of the company shall not exceed the amount of the premiums paid on this policy." The assured died September 9th, 1921, and the issue in the case was as to whether or not he committed suicide and so reduced the liability of the defendant to the amount of the premiums which had been paid upon the policy. The jury returned a verdict for the plaintiff to recover the full amount of the policy, and one ground of claimed error is the refusal of the trial court to set that verdict aside.

The credibility of one of the principal witnesses offered by the defendant in support of its plea, a Mrs. Collins, was attacked by the plaintiff, which offered testimony of contradictory statements made by her out of court. Laying her evidence out of the case for the time being, the following facts were clearly established by the testimony of disinterested and mutually corroborating witnesses: The decedent was a carpenter, forty-three years old, and had no family or known relatives. He had lived for some eight or nine years in Branford, boarding all the time in one family. Some three or four weeks before he died he secured work in New Haven and went there to live, renting a room in a house kept by Mrs. Collins. This room was on the third floor, close under a tin roof; it was very small, only about five feet and a half in width, and only a little longer than the bed in it; it had a window and door at opposite ends; and it was lighted by a single gas fixture, which at the time of decedent's death was in good condition. The day of September 8th had been warm, the thermometer registering as

high as eighty-five degrees, and this warmth continued into the night. On the morning of September 9th, a son of Mrs. Collins, as he was coming up from his breakfast to his own room on the floor below, detected a slight odor of gas and an investigation was made. On opening the door of decedent's room, which was closed, the decedent was found lying uncovered on his bed, dressed only in his underclothes, dead. The gas was turned on and the window was shut; over the knob of the door a towel was hung in such a way that it covered the keyhole; and a shirt lay on the floor in such a position as to indicate that it had very likely been placed across the bottom of the door, so as to close any crack that might be there. The physical appearance of the body indicated that the decedent died from poisoning by illuminating gas, and that his death had occurred in the neighborhood of five or six o'clock that morning. Certain letters, lost before the trial, were found in the room, in which the decedent, according to the rather vague recollection of one witness, had written that he was tired of life.

If any credit were to be given to the testimony of Mrs. Collins, it would go to strengthen defendant's case, for she testified, first, that the decedent had told her that he wanted plenty of fresh air and that he had been accustomed to leave his window and door open at night, and so, by reason of a window in the hall opposite his room, had obtained a circulation of air through it; and secondly, that the night before his death, he had called some one upon the telephone, apparently with the idea of paying a visit, and had been disappointed in the answer he had received, had seemed "a little bit excited and nervous." On the other hand, the only positive evidence introduced by the plaintiff upon the issue of the manner of decedent's death, was that of the woman at whose house he had lived in

Branford, and certain acquaintances, who had seen him not long before his death, one the day before, who stated that he had seemed to them cheerful and in his usual good spirits. It did offer testimony that Mrs. Collins had stated out of court that there was a leak in the gas-pipe in decedent's room; and it attacked the inferences that the defendant sought to draw from various of the circumstances connected with his death, pointing to the fact that the door was not locked, explaining the hanging of the towel on the door knob as due to the lack of facilities in the room, the shirt on the floor as accidentally thrown there, and the closed window upon the theory that, as there was no evidence offered that it was not raining that night, it might have been shut to keep rain from blowing in upon the bed! The statement out of court attributed to Mrs. Collins exhausted itself in the effect it had on the credit to be accorded to her, and was not evidence that there was a leak in the gas-pipe; *Wheeler* v. *Thomas,* 67 Conn. 577, 580, 35 Atl. 499; and the attempted explanations rather serve to accentuate the strength of the inference which it seems to us is the only reasonable one that can be drawn from the case as a whole, that the decedent committed suicide. We cannot explain the verdict upon any other ground than that some mistake was made by the jury in the application of legal principles or else that they or some of them were influenced by prejudice or partiality. *State* v. *O'Brien,* 101 Conn. 499, 503, 126 Atl. 690. The trial court was in error in permitting the verdict to stand to any greater amount than that of the premiums which had been paid upon the policy, with interest, a liability which the defendant admitted in its answer, and it should have directed that the verdict be set aside unless the plaintiff filed a *remittitur* reducing the amount of its recovery to that sum.

The appellant also raises a question of evidence which is bound to recur, if not in this case, in some other. The plaintiff offered in evidence a copy of the certificate of death of the decedent made and filed by the medical examiner of the city of New Haven. This certificate was in the usual form upon a blank furnished by the State department of health under the provisions of § § 2375 and 2376 of the General Statutes, and ran as follows, the italicized words being those written by the medical examiner, the others being printed: "I certify that I attended *Charles A. Doolittle* in *his* last illness, and to the best of my knowledge and belief the cause of *his* death was as hereinafter written: Duration . . . Primary or chief cause, *Illuminating Gas Poisoning.* Secondary or contributing. . . . See opposite side. Remarks: *Suicidal.*" In view of the nature of the death, it was the duty of the medical examiner to make out this certificate. General Statutes, § 228. The law then in effect required that he should state upon a blank furnished by the State department of health the name of the deceased, "the disease of which he died, or the cause of death, defined so that such death can be classified under the international list of causes of death, and the duration of disease if known." Public Acts of 1919, Chap. 45. The Manual of the International List of Causes of Death as published by the United States Census Bureau contains a section headed "External Causes" under which are included deaths by suicide in various ways, death by accident, by homicide and the like, and one of these causes is "Suicide by poisonous gas." It was, then, clearly the duty of the medical examiner to state, if that should be his conclusion, that the decedent came to his death by suicide, and the form in which he made out the certificate sufficiently defined that cause so that it might be classified under the in-

ternational list. When the certificate was offered, however, the court ruled that it could not be used as evidence in so far as it contained "the remarks or conclusions of the medical examiner" and thereupon .only that portion preceding the word "Remarks" was read to the jury.

In this ruling the court was in error. At first blush, it does seem startling that the conclusion of the medical examiner, founded not upon knowledge or information peculiar to the medical profession but upon external facts and circumstances, a conclusion which he would not be permitted to give in evidence were he called as a witness, should be put before the jury by means of his certificate. Undoubtedly there is some authority against the admission of such a certificate as tending in any way to prove the truth of such a statement as the one before us, but an examination of the cases leads to the conclusion that its weight rests rather in numbers of decisions than force of reasoning. The admissibility of such a statement as evidence of all the facts required by law to be stated in it is admirably argued in *Bozicevich* v. *Kenilworth Mercantile Co.,* 58 Utah, 458, 199 Pac. 406, and is supported by the following decisions: *Priddy* v. *Boice,* 201 Mo. 309, 99 S. W. 1055; *State* v. *McDonald,* 55 Ore. 419, 426, 104 Pac. 967; *Armstrong* v. *Modern Woodmen of America,* 93 Wash. 352, 160 Pac. 946; *Blair* v. *Sayre,* 29 W. Va. 604, 608, 2 S. E. 97. In this State we find support in *Hellman* v. *Karp,* 93 Conn. 317, 321, 105 Atl. 678, and in *Gett* v. *Isaacson,* 98 Conn. 539, 120 Atl. 156, where we held that birth certificates were admissible as evidence of the paternity of the child whose birth was recorded. The particular nature of the entry here in question emphasizes the reasons which have led some courts to hold an opposite view, but we cannot in principle distinguish this case; in both, the real

objection is that the certificate is admitted as tending to prove a matter which the rules of evidence would not permit a witness to state in court. We agree with Professor Wigmore's conclusion (3 Evidence, 2d Ed. § 1646, p. 441): "It is sensible to admit all such entries for what they may be worth; in . . . controverted cases, other evidence is usually available"; but we add that in cases such as this the jury ought to be cautioned as to the weight it is to attribute to them and warned that it must be vigilant not to permit the conclusion of the person making the certificate to take the place of its own.

There is error, the judgment is set aside and the cause remanded with direction to set the verdict aside, unless the plaintiff shall file a *remittitur* reducing it to the sum we have stated, in which event judgment shall be entered upon the verdict so reduced.

In this opinion the other judges concurred.