(139 So. 439)

### DAUGHERTY v. STATE.
### I Div. 55.

Court of Appeals of Alabama.
Jan. 12, 1932.

Rehearing Granted Feb. 2, 1932.

Adams & Gillmore, of Grove Hill, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for the State.

SAMFORD, J.

The defendant in this case killed Buck Patrick by stabbing him with a knife. There was a difficulty in the public road. The time was about midnight; deceased was thirty-five years old; weighed about one hundred and eighty pounds; strong and active; was a man of turbulent, violent, and bloodthirsty character; at the time of the difficulty was drinking and under the influence of whisky. The defendant is a small man; one armed; weight about one hundred and thirty pounds. The plea was self-defense. On this plea the evidence was in conflict as to who brought on or provoked the difficulty. There seems to be no conflict in the evidence as to other points involved.

Exceptions reserved relate to the rulings of the court upon the admission of testimony and to the charge of the court upon what it takes to constitute character for peace and quiet.

 It is insisted by appellant that: "Where the defendant pleads self defense, has shown that the deceased was a powerful, able-bodied man, while defendant was a one armed smaller man, that deceased had been drinking, and that he was of a quarrelsome, turbulent or violent disposition," it was error to permit the state to offer evidence that deceased had the reputation of being a fair fighter. Evidence of the bad character of the deceased for violence is admissible for the purpose of illustrating the circumstances attending the homicide, and to qualify, explain, and give meaning to and point to the words and conduct of the deceased at the time of the killing. Eiland v. State, 52 Ala. 322. If the character of deceased was that of a violent, turbulent, bloodthirsty man, who fought with dangerous weapons, the defendant would be warranted in acting more promptly in defending himself than he would if the defendant, while turbulent, had the reputation of fighting fair and without weapons. Cleveland v. State, 86 Ala. 1, 5 So. 426. The defense having offered evidence tending to prove the general character of deceased for peace and quiet, it was admissible for the state on rebuttal to show that deceased had the reputation of being a "fair fighter." Twitty v. State, 168 Ala. 59, 53 So. 308.

 The evidence tends to prove that the defendant and deceased had some words at a certain point in the public road; that the brother of deceased took hold of deceased and led him off "down the road," where he remained for some minutes and then returned, at which time the killing took place. It was relevant and admissible for the state to prove by the witness James that, while deceased was "down the road," defendant said, in his presence, "they would have trouble if deceased came back up there." This was in the nature of a threat, and indicated the frame of mind of defendant, that he would not retreat or seek to avoid a difficulty.

 It was also admissible for the witness James to testify that, while defendant and he were waiting in the road, he heard a sound, "like the clicking of a knife," as tending to prove that defendant was awaiting the return of deceased and was prepared for a continuance of the difficulty.

 It was not error for the court to refuse to allow defendant to prove that deceased had "raised a disturbance" at a dance at another place and several hours before this difficulty.

 It was not error for the court to refuse to allow defendant to prove that some time before the difficulty deceased had struck one Hogueson with metal knucks. General character cannot be proven by specific acts.

 When the defendant was being examined as a witness, the state, on cross-examination, was allowed to ask this question: "Whether or not, at the house of a Mrs. Hyatt, about three months after the killing, and in the presence of Mrs. Hyatt and two others (naming them) he said, he (defendant) didn't hate that he killed Buck Patrick, that's what he went out there for." To this question the defendant answered "No." The state then called Mrs. Hyatt to the stand, who testified that defendant did make the statement at the time and place named. Objections and exceptions were properly reserved. This was an incriminating admission, which is presumed to be involuntary unless the contrary is made to appear. McGehee v. State, 171 Ala. 19, 55 So. 159. Such statements of an incriminating nature may

594

be admitted only after proper predicate is laid. Thomas v. State, 19 Ala. App. 187, 96 So. 182; Ex parte Thomas, 209 Ala. 289, 96 So. 184; Monroe v. State, 23 Ala. App. 441, 126 So. 614. The general rule, as laid down in Greenleaf on Ev. (16 Ed.) pp. 346, 347, to the effect that inculpatory admissions not amounting to specific confession of guilt require, when offered by the state, no preliminary proof of their voluntary character, has been modified in this state, and in this jurisdiction the rule is that inculpatory admissions in the nature of a confession, that is, directly relating to the fact or circumstances of the crime, and connecting the defendant therewith are subject to the same rules of admissibility as direct confessions, and are therefore prima facie involuntary and inadmissible. McGehee v. State, supra; Wilson v. State, 84 Ala. 426, 4 So. 383; Shelton v. State, 144 Ala. 106, 42 So. 30.

■■■ In the instant case, however, the defendant elected to testify as a witness in his own behalf. Where this is the case, he is subject to cross-examination like any other witness, and may be impeached by proof of contradictory statements previously made by him. This principle extends to declarations and statements which would have been excluded as evidence when offered as confessions, because not shown to have been made voluntarily. Maloy v. State (Ala. App.) 130 So. 902.[1] Such evidence may be limited on motion to impeachment, but is not subject to a general objection.

■■ State's witness James was permitted to testify, over defendant's objection and exception, that just prior to the fatal difficulty, and while deceased was "off down the road" and was trying to come back to where defendant was, defendant was "clicking" his knife, and said, "Let him come on back up there; I've got my water on." To many people this would seem a senseless remark, but in view of the surrounding circumstances the jury might infer a threat by the defendant.

The other rulings of the court were without error, and the judgment is affirmed.

Affirmed.

