51 So.2d 376

## BAKER v. STATE.

### 6 Div. 991.

Court of Appeals of Alabama.

Feb. 7, 1951.

Rehearing Denied March 6, 1951.

Jas. A. McCollum and Jere Campbell, of Tuscaloosa, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The case below was submitted to the jury on a count charging this appellant with buying, receiving, or concealing certain personal property of the aggregate value of $128, knowing that it was stolen and having no intent to restore it to the owner.

The evidence presented by the State showed without dispute that the property had been stolen.

It further tended to show that several weeks later police officers went to the home of Mr. Hallman in Tuscaloosa County where Mrs. Lee Baker, this appellant, was employed as a practical nurse.

Among these officers were Mr. J. F. King and Mr. Harless.

As to what occurred during this visit we quote the following from Mr. King's testimony on direct examination: A. Asked Mr. Hallman. Well, I went in there and Mrs. Baker had retired, and I asked her, I told her I would like to get the jewelry that Frank McCarter had given her—

"Mr. Campbell: I object.

"Court: On what grounds?

"Mr. Campbell: Qualify him like before, no promise or threat or hope of reward.

"Q. Did you hear Mr. Harless or anyone else make any threats towards Mrs. Baker or hold out any hope of reward or any inducement in order to get her to make a statement? A. No, I didn't make any threats at all to Mrs. Baker, but I did say this to Mrs. Baker, that if she would give it up willingly she wouldn't be involved in this case.

"Mr. Campbell: We make a motion to exclude all that.

"Court: Overruled.

"A. (continuing) Mrs. Baker asked about what it was, I told her it was a green box.

"Q. What was the first thing you said to her about the box of jewelry? A. I just asked about the jewelry that Frank had given her.

"Q. Frank McCarter? A. McCarter. I finally asked her, I said, 'Mrs. Baker, if you don't feel like getting up, if you will tell me where it is I will get it.' She said, 'You can't get it.' I went out of the room, I waited out about five minutes and I asked her if I may come in. Well, I went in and there was a closet and she got a key out of her purse, there was a suitcase there in the closet, and she tried that key and it wouldn't fit, she got a second key and unlocked the suitcase and handed me the green box, and I asked her if it was intact, and she said, 'Yes,' and she handed me the key to the jewelry box and I unlocked it and all this was in it. When she made this remark she said that 'I want you to know that I didn't know where it come from and if I would have known it had been stolen I

wouldn't have accepted it, and I says, 'Well, you're not responsible for his acts,' and I asked her when he gave it to her and she said last night."

\* \* \* \* \* \*

"Q. And she told you that Frank McCarter had given her the box the night before? A. I asked her when Frank had given her the box she said, 'Last night,' that's the way she expressed it."

Mr. Harless' testimony was largely corroboratory of Mr. King's. Upon direct examination he first testified that no hope of reward or threats were made toward Mrs. Baker, and that her statements were voluntary. He then testified Mrs. Baker had told Mr. King that she had gotten the jewelry the night before and that one Frank McCarter had given it to her, and she had stated that if she had known the jewelry had been stolen she would not have had it.

The cross examination of Mr. Harless discloses the following:

"Q. Mr. Harless, during that first morning did you at any time hear Mr. King offer any reward, hope of reward, if she told where she got the jewelry box? A. The only thing Mr. King ever said to her is that give it up willingly and you won't be involved in this case.

"Mr. Campbell: If Your Honor please, we move to exclude all the testimony that he said about the box on the grounds that there was some inducement or hope of reward.

"Court: Well, I will overrule.

"Mr. Campbell: We except."

Testifying in her own behalf the appellant admitted possession of the jewelry, but denied she had told the officers that Frank McCarter had given it to her, but insisted that she had told the officers that one Francis Malone had given it to her.

However on cross examination she claimed she did not know Malone's whereabouts; that he was a travelling salesman; and that when she had seen him he had always contacted her by letter; she would meet him away from the house where she was staying and he would leave her at the

front gate upon returning from a date, and that no one that she knew of had ever seen them together.

She also denied that she knew McCarter's reputation in the community.

In rebuttal, but over only a general objection, the State was permitted to show by several witnesses that McCarter's reputation was bad.

Of chief concern in this appeal is the character of the statements made by the appellant to the officers at the time they visited the Hallman home and recovered from her the stolen jewelry, for clearly under the testimony of the officers an inducement in the nature of a promise of immunity from prosecution was offered appellant.

■ The law in this State governing the admission into evidence of inculpatory statements is laid down in McGehee v. State, 171 Ala. 19, 55 So. 159, 160· as follows:

"By the weight of authority, inculpatory admissions not amounting to a specific confession of guilt require when offered by the state no preliminary proof of their voluntary character. 1 Gr.Ev. (16th Ed.) pp. 346, 347; 6 A. &. E.Ency.Law, p. 557; 12 Cyc. 419.

"In this state, however, a modified rule has been adopted, and inculpatory admissions in the nature of a confession—that is, directly relating to the fact or circumstances of the crime, and connecting the defendant therewith—are subjected to the same rules of admissibility as direct confessions, and are therefore prima facie involuntary and inadmissible. Wilson v. State, 84 Ala. 426, 4 So. 383; Shelton v. State, 144 Ala. 106, 42 So. 30. But admissions as to purely collateral matters, which are in no sense confessory of guilt, are not within the scope of the rule, and the predicate as for a confession need not be laid. Pentecost v. State, 107 Ala. 81, 92, 18 So. 146; Meadows v. State, 136 Ala. 67, 34 So. 183; Aikin v. State, 35 Ala. 399. And see, also, Love v. State, 124 Ala. [82] 84, 27 So. 217, where the distinction is suggested."

■ The standards for determining whether a statement is a confession or an admission were outlined again, in somewhat different fashion in Herring v. State, 242 Ala. 85, 5 So.2d 104, 105, in the following language: "The rule in this state does not limit confessions, requiring the laying of a predicate, to direct confessions of guilt. It is required, however, that the statement, within itself, shall be incriminating, support an inference of guilt. Statements of collateral facts, not criminating within themselves, but depending on other and outside evidence, disclosing a chain of circumstances incriminating in character, are not confessions within the rule requiring the laying of a predicate, but are deemed voluntary."

■ It is fundamental that the possession of recently stolen goods casts upon an accused the onus of explaining his possession, and if he fails to make a reasonable explanation a presumption of guilt arises which. will support a conviction. Culligan v. State, 29 Ala.App. 29, 191 So. 405. See also Ala.Dig., Receiving stolen goods ⊜ 8(1), and (2) for numerous other authorities.

■ While the State must prove guilty knowledge on the part of the accused, such guilty knowledge may be inferred from all the circumstances surrounding the acquisition of the property. Vacalis v. State, 204 Ala. 345, 86 So. 92. Guilty knowledge may be inferred from the fact that the goods were purchased for much less than their real value, or from a false denial of the purchase of the goods. Fulton v. State, 8 Ala.App. 257, 62 So. 959.

Cases from other jurisdictions hold that where it is shown that the accused knew the reputation of the person from whom he acquired the goods, this factor may also be shown. State v. Goldblat, 50 Mo.App. 186; Huggins v. People, 135 Ill. 243, 25 N.E. 1002.

■ We think it must rationally follow that statements of the accused as to whom she acquired the jewelry from, and when it was acquired, and under what circumstances, constitute a material part of the

basis of the prosecution against this appellant.

These statements are incriminating, and in themselves tend to support an inference of guilt. Certainly they relate directly to the fact and circumstance of the crime, and connect the appellant therewith.

They must therefore be considered as inculpatory statements in the nature of a confession.

■ Fortifying the above conclusion we find the following statements in decisions of this court pertaining to the admission of statements of an accused relative to his acquisition of possession of stolen goods:

"and therefore, *a proper predicate having been laid* as to its voluntary character, it was proper to prove the admissions of the defendant relative to his possession, as going to show that possession, the recent unexplained possession of stolen goods being presumptive of defendant's guilt as to the larceny count. Taylor v. State, 42 Ala. 529; Maynard v. State, 46 Ala. 85." (Italics ours.) Samford, J., in Leverett v. State, 18 Ala.App. 578, 93 So. 347, 349.

\* \* \* \* \* \*

"*Proper predicate having been laid*, any statement relating to the stolen meat, either admitting or denying knowledge or possession of it, by either the defendant or his codefendant in the indictment, in the presence of the other, was admissible." (Italics ours.) Foster, J., in Dawkins v. State, 20 Ala.App. 54, 100 So. 619.

■ The action of the lower court in admitting these statements, and denying appellant's motion to exclude, when the involuntary character of the statements was positively shown, constitutes reversible error.

Over the defendant's general objection the State, after the defense had rested, was permitted to introduce evidence tending to show that Frank McCarter's reputation in the community in which he lived was bad. So far as disclosed by the record McCarter's sole connection with this case arises from the fact that the officers testified that the appellant stated to them that McCarter had given her the jewelry. He was not a witness in the trial below.

■ Ordinarily, the character of a third party, when not a witness, is beyond the issues of a proceeding, and therefore irrelevant and inadmissible. Banks v. State, 72 Ala. 522; Brown v. State, 120 Ala. 342, 25 So. 182; Toliver v. State, 142 Ala. 3, 38 So. 801; Rollings v. State, 160 Ala. 82, 49 So. 329.

However, as stated by Mr. Wigmore, "if there is relevancy in the fact of character, i. e. if some act is involved upon the probability of which a moral trait can throw light, the character may well be received." See Wigmore on Evidence, 3rd Ed. Sec. 68. Since the good faith of one accused of receiving stolen goods may be inferred in part· from the circumstances of his acquisition of the goods, the character of the person from whom the goods were received must of necessity be considered of probative value in such a prosecution, and therefore admissible.

■ Since however the very purpose for which such evidence should be admitted is to show an accused's state of mind, his good faith or lack thereof, such evidence should not be admitted until it be · first shown that the accused actually knew such character.

■ In the present case the appellant denied on cross examination that she knew McCarter's reputation.

The evidence offered by the State tending to show McCarter's bad reputation should not have been received until the State introduced evidence tending to positively show such knowledge on appellant's part.

■ We are unwilling to predicate error in this instance however for the reason that only general objections unsupported by any grounds, were interposed to all of such evidence offered by the State. As we wrote in Head v. State, Ala.App., 44 So.2d 441, 445: "If only a general objection is interposed, or only general grounds are assigned in support of an objection, no error results in overruling such objection unless the evidence sought is illegal for any purpose and cannot be made legal by other evidence, or by otherwise framing the question. Louisville & Nashville R. Co. v. Scott, 232 Ala. 284, 167 So. 572. Unless

the objection particularizes the defect in the question neither the interrogator, nor the court, is apprised of a defect that may be latent therein, and no opportunity is afforded to correct such defect by reframing the question, or supplying additional evidence. Walker v. Jones, 33 Ala.App. 348, 34 So.2d 608. The evidence sought under the questions above mentioned was not obnoxious to all rules of evidence, and not illegal under any and all circumstances."

Other points are argued in appellant's brief. They are unlikely to arise in another trial of this cause. We therefore reserve consideration of them, being clear to the conclusion that this cause must be reversed for the error above pointed out.

Reversed and remanded.