123 So.2d 304

Lillie **BAILEY**

v.

**STATE.**

**5 Div. 579.**

Court of Appeals of Alabama.

May 24, 1960.

Rehearing Denied Aug. 16, 1960.

Harry D. Raymon, Tuskegee, for appellant.

MacDonald Gallion, Atty. Gen., and Jos. D. Phelps, Asst. Atty. Gen., for the State.

CATES, Judge.

This is the second appeal in this cause. The second trial fixed the appellant's punishment at five years imprisonment.

The facts on the first appeal in 40 Ala. App. 95, 112 So.2d 505, suffice here.

Appellant argues that there is no evidence that she did anything other than defend herself from the deceased's unprovoked assault with a deadly weapon. Mr. L. M. Godwin, a Tuskegee policeman, testified that after the killing the appellant stated she was walking down the road with a knife open in her hand. This statement, which would support an inference of aggression, when considered with the other testimony, was sufficient to allow the case to go to the jury.

The appellant's brief is primarily devoted to the claim that the solicitor, by persistently posing illegal questions, insinuated that the appellant and the husband of Annie Morgan, the deceased, had some illicit relationship.

The first instance of claimed error was the solicitor's asking if the victim was not "a tall, big, married woman." The State's witness to whom the question was directed had beforehand called the deceased "Mrs." Morgan. A fair reading of the transcript of the evidence puts beyond dispute the fact that the deceased enjoyed the reputation of being married. Hence, we cannot put the court in error for allowing the question: it did no harm.

The deceased's husband, Charlie Morgan, took the stand as a witness for the defense. On cross-examination, the solicitor sought, for the purpose of showing bias, to show that some two weeks before the fatal cutting, Morgan had stated, while in the act of dumping a tub of water on his wife, "Lillie Bailey is going to be the death of you yet." The court sustained the objection to the question and also excluded it. Whereupon, the solicitor said that he was offering this to show the witness's bias. Defense counsel objected to the statement and moved that it be excluded, which the court did.

The main part of the colloquy which contained the claimed prejudicial matter went as follows:

"Mr. Young: Your Honor, I am offering this to show his bias in this case.

"The Court: How could that show bias?

"Mr. Young: I want to show and I can show that this man was running around with the Defendant and he was a married man, married to the deceased party, and he was running around with her and here he is up here testifying in her defense in this case.

"Mr. Raymon: Your Honor, we are going to object to the Solicitor's statement and move that it be excluded.

"The Court: That is excluded, Gentlemen of the Jury.

"Mr. Raymon: I make a motion at this time for a mistrial because of the Solicitor's statement voluntary statement before this Jury.

"The Court: Gentlemen of the Jury, the Court excludes that statement made by the Solicitor. The Solicitor has no evidence and can give no evidence in the case unless he sits on this stand

under oath. Therefore you will absolutely ignore any statement he makes about the case until he argues the case, and then you will have a right to consider that.

"Mr. Raymon: May I have a ruling on my motion?

"The Court: And the motion for a mistrial is denied.

"Mr. Raymon: We have the exception.

"The Court: And the solicitor will absolutely watch himself and not make statements that might prove prejudicial..:

"Mr. Young: If the Court please—

"The Court: Mr. Solicitor, the Supreme Court has held that the Court has to act very strong on those matters, and if he does not, it is room for a mistrial. So I have acted that way, and of course there is no room for an argument. Go ahead."

Ordinarily, the proper method to show the bias of a witness toward a party is to ask a direct question before any interrogation as to details.

██ In view of the fact that one of the State's witnesses had previously testified on cross-examination that the deceased had told the defendant to stay out of her husband's car, there was certainly evidence which had gone before the jury to show bad feeling between appellant and deceased apparently revolving around jealousy inspired by the conduct of the defendant and the deceased's husband. Though here the charge was not of murder but voluntary manslaughter, nevertheless the complexity of issues arising out of the claim of self-defense would seem to permit the asking of questions which would shed light on motive. We find no injury to the defendant in the rulings of the court.

The solicitor continued the cross-examination of Charlie Morgan with the question, "Did Lillie Bailey have on her clothes when she came to your house?" This was objected to and the objection sustained. Renewal of the motion for mistrial was denied and the court very strenuously warned the solicitor and told the jury absolutely to ignore the question, that it was no part of the evidence and did not affect the case.

█ On cross-examination of the defendant, the solicitor asked her how long she had been "going with" Charlie Morgan. The court ruled out the expression "going with" as too vague. When the question was reframed to ask her how long she had been dating Charlie Morgan, the defendant answered, "I never dated him." No objection was taken to the latter question and no motion was made to exclude this answer. No motion for new trial was made. Nothing is presented for our review. Jackson v. State, 260 Ala. 641, 71 So.2d 825.

█ After asking two other questions which were not answered, first because of sustention of objection to one and the court's reminder to the solicitor that the second was repetitious, the solicitor then said:

"If the Court please, I would like to call this section of the Court Room out in the corridor just for a minute or two."

The trial judge evidently considered that the statement partook of argumentative rather than of interrogative merit because he told the jury to absolutely ignore the statements and ordered the solicitor to refrain from making such statements. Furthermore, he dictated into the record a statement that there were about one hundred or more persons present beyond the bar of the court who were not witnesses in the case.

We are unable, on the record before us, to ascribe any clear meaning to this request. It may well be, as the defendant contends, that this was a last minute at-

tempt of the State to round up witnesses among the courtroom spectators, but we do not think that it necessarily implied the State was boasting of a vast array of witnesses to make the defendant out to be a woman of ill repute.

On further cross-examination of the appellant, in questioning her about carrying her knife open, she stated she did not always carry it. The solicitor then asked, "Well, when you went to beer joints and things like that, didn't you carry it with you?" Objection was sustained.

The final claim of error rests upon the contention that the predicate for an impeaching question was not properly laid. The appellant was asked on cross-examination as follows:

"Q. I will ask you if on that night after you cut Annie Morgan there in the roadway in front of your house, if you made this statement in the presence of Officer Durham and Officer Godwin, and no other persons that you were walking down the road with your knife in your hand, open in your hand?

"Mr. Raymon: We object, if it please the Court.

"The Court: Overruled."

■ We consider the purported statement asked about was not criminating in and of itself alone. See Baker v. State, 35 Ala.App. 596, 51 So.2d 376. Hence, a general objection would not suffice for our review. Moreover, the same question had shortly beforehand been put to the defendant without objection, and the appellant gave the same answer. Cf. Lipscomb v. State, 32 Ala.App. 623, 29 So.2d 145. Therefore, the repetition of question and answer was harmless. Peyton v. State, 40 Ala.App., 556, 120 So.2d 415 (headnote 14), and cases there cited.

■ Enquiry about this purported statement was not an attempt to impeach on an immaterial matter. Slaton v. State, 21 Ala.App. 422, 109 So. 118. That the State laid a predicate in questioning the defendant as required in the case of sought-for impeachment of a witness who is not a party, appears proper here. See Blackwell v. State, 264 Ala. 553, 88 So.2d 347.

■ Claimed error is said to reside in the fact that after contradiction was shown by the testimony of Officer Godwin, Mr. Godwin, on cross-examination, stated that Mr. Hornsby, the sheriff, was nearby when appellant made the statement. However, a fair reading of Godwin's cross-examination shows that it was a jury question as to whether Mr. Hornsby was within hearing distance of the appellant when she made the claimed statement. Mr. Godwin testified that Hornsby, who was then looking for the knife, was "as far as from here to that door over there." Having been asked if that was not in hearing distance, he replied, "Not unless she was shouting."

Under the rule in State v. Marler, 2 Ala. 43, 46, had Sheriff Hornsby been within hearing range of the conversation, this would not have spoiled the entire purported impeachment but would merely have prevented Hornsby from testifying as an impeaching witness.

We also note that when the defendant was asked the question containing the predicate originally, she made no point of the sheriff's not being there, because she answered in the negative as to her making any statement at the time which was well identified to her. Her answer was, "I don't remember making that statement. I don't think I did."

We have considered the entire record under the mandate of Code 1940, T. 15, § 389, and consider that there has been no error to the probable prejudice of any substantial rights of the defendant.

■ It must be remembered that a trial courtroom cannot always be kept in

a legally aseptic condition. Accordingly, the law must leave the control of the conduct of attorneys, witnesses and parties primarily in the hands of the trial judge.

We, on appeal, are not able to see before us the jurymen, neither are we able to see the expressions in faces, nor hear the nuances and modulations of voices, nor to perceive laughter or tears. For these reasons, if for no others, we must ordinarily rely upon the antiseptic effect of the trial judge's promptly, sternly and strictly confining the issues to those presented by the indictment.

In this case we think the trial judge fully lived up to his oath. We should have to say that the jury system is a mockery were we to believe that his instructions in this record before us had not removed any prejudicial effect which might have resided in the histrionics and rhetoric complained of.

The judgment below is due to be

Affirmed.

## On Rehearing

CATES, Judge.

In the third paragraph above, we said the testimony of Mr. Godwin would support an inference that the appellant was an aggressor.

Appellant's counsel, on rehearing, correctly points out that Mr. Godwin's testimony on that point came in by way of rebuttal. This, however, does not change our conclusion that there was sufficient evidence to legally support the verdict both when the State first rested and at the end of all the testimony.

*First,* the State, on chief, made out a prima facie case.[1] *Second,* the de-

fense brought in new matter tending to show self-defense. *Third,* the State, on rebuttal, offered proof counter to self-defense.

Appellant further submits that we are wrong in treating Mr. Godwin's testimony as part of the affirmative proof upon the main issue of the case. Mr. Godwin's testimony on rebuttal, appellant contends, should be confined to impeachment. We are referred to Jones on Evidence (5th Ed.), § 932 (footnote 8, Vol. 4, p. 1751), citing Branford Trust Co. v. Prudential Ins. Co., 102 Conn. 481, 129 A. 379, 42 A.L.R. 1450. However, we believe the rule referred to in that section applies only to a witness who is not a party.

In § 934, under the catch line "Party as Witness," Jones points out that the statements of a party are admitted upon a different principle. There is a comment by the author (footnote 9, § 934, p. 1758) to the effect that fair play would seem to require that the same predicatory foundation should be laid in impeaching a party as is required with respect to other witnesses.

Judge McElroy, in his Law of Evidence in Alabama (2d Ed.), Vol. 1, p. 380, § 159.02, states:

"Of course, if the witness is a party the self-contradictory statement is also an admission and hence is substantive evidence against such party. Kimmey v. Calloway, 52 Ala 222; Hill v. State, 194 Ala 11, 69 So 941, syl. 17, 2 ALR 509; Dickson v. Dinsmore, 219 Ala 353, 122 So 437; Anno: 21 AnnCas 1241; Bennett v. Roberson [Robertson], 108 [107] Vt 202, 177 A 625, 98 ALR 152."

From Blackwell v. State, 264 Ala. 553, 88 So.2d 347, in criminal cases, the rule appears to be that, (1) if the claimed prior self-contradictory statement amounts,

1. Evidence of the presence of a defendant alone with his alleged victim and of circumstances of death consistent with the accused's abilities and opportunity to do

the deed may support a prima facie case of homicide. McMurtrey v. State, 39 Ala. App. 319, 101 So.2d 88.

in law, to a confession not shown to have been voluntarily made, or (2) if it be not tantamount to a confession in that it amounts merely to an admission against interest, then the predicate to impeach should be put to the accused as to any other witness.

Mr. Godwin's rebuttal testimony refuted the defendant's answer that she was not carrying a knife opened. The tendency of her admission as given by Godwin was twofold: he impeached her credibility and he showed an admission partly opposed to her claim of self-defense. The defense did not move the Court to limit the effect of Mr. Godwin's testimony to impeachment as Daugherty v. State, 24 Ala.App. 591, 139 So. 439, indicates might have been done.

Application overruled.