CLARK, Retired Circuit Judge.
This is an appeal from a conviction of robbery and a sentence of imprisonment for twenty years.
Mike Kerr testified that he was employed as a clerk by the King’s Inn in Huntsville; between 2:30 and 2:45 A.M. on February 2, 1977, there were knocks at the outside doors, which had been locked, and the witness unlocked the doors and admitted the defendant; defendant asked if there were any vacancies; while the witness was in the process of registering defendant, whom the witness had known as a previous guest of the hotel, defendant pulled a gun out of his pants and told the witness to give him all the money in the drawer. The witness asked defendant if he wanted the checks or the coins, and defendant replied, “No, just the bills,” which the witness gave defendant. Defendant told the witness not to call anyone for five minutes or the witness “was dead, or something like that.” According to the witness, there was about a hundred dollars in the drawer at the time. The witness further testified that just after defendant went out the door, the witness heard him running, and then the witness called the police.
Mr. Homer Reed, another witness for the State, testified that while he was close to the restaurant adjacent to the King’s Inn he saw “a black man backing out of the King’s Inn front door” with a gun in his hand; the man ran through a breeze way out the back and into a gravel parking lot behind the King’s Inn; a white Chevrolet, with a man in it, was in the parking lot with its tail lights burning; defendant went to that automobile and the automobile drove off. According to the witness, a police car arrived just before the automobile stopped in the parking lot drove off, and the witness directed the officers to the automobile, and they “made chase after the car.” Soon thereafter the officers returned, and the witness went with them to the police department and identified defendant as the man backing out of the hotel with the gun in his hand. At that time, there was another black man with defendant, whom the witness could not identify as the driver of the automobile, but the witness said that he heard a conversation between the two in which the other man said, “I told you we shouldn’t go back a second time. We could have been in a good, warm bed now and have a woman with us.” Defendant replied, “Well, you will get a good, warm bed but you won’t have a woman.”
Testimony of police officers, witnesses called by the State, was to the effect that defendant and the driver of the white Chevrolet automobile, identified as Thomas Lightfoot, were arrested soon after the police department was informed of the robbery. A pistol similar to the one that Kerr testified had been used in the robbery was found in the middle of the front seat of the automobile. It was loaded. A cartridge like the cartridges in the gun was found in the left front pocket of defendant. In the upper right pocket of the jacket on the other man there was sixty-one dollars.
Testimony of Thomas Lightfoot and the defendant constituted all of the evidence for defendant.
Thomas Lightfoot testified that he took defendant in the white Chevrolet automobile, which belonged to Lightfoot’s sister, to the Steak and Egg House, which adjoined the King’s Inn, about 2:00 o’clock on the morning of February 2, 1977; and watched defendant walk over to the Steak and Egg House; that defendant returned soon without the “lady”; that at that time he saw *347 another man walking across the lot. Little, if anything, was said by him in his testimony as to what occurred after he said defendant returned to the automobile, but the witness testified that the pistol that was in the automobile when the two were stopped by the police officers was the witness’ pistol, that the witness was using for his protection. He said defendant had nothing to do with the pistol and did not have his hands on it. He further testified that the sixty-one dollars found in his pocket was a part of some money that he had left from the cashing of his previous welfare check. He denied having made a statement to defendant at the station of the police department to the effect that he had been in the King’s Inn earlier. He said he had not been in the King’s Inn that night, but that he had been to the King’s Inn about 8:00 o’clock that night and had there met defendant and a girl and that he (Lightfoot) “carried the girl home.” He said that defendant had been in a room with the girl at the King’s Inn.
Defendant testified that he had been with Lightfoot the night of the alleged robbery; he called Lightfoot from the King’s Inn about 8:00 o’clock that night; he said he was in a room at the King’s Inn with a girl. He said he had made arrangements with “two guys over there” who “sometimes . . . would let me have a room for as long as I wanted it and let me pay them later.” He said he knew Mike Kerr, but Mike Kerr was not on duty at that time of the night. He said Lightfoot picked him up in front of the King’s Inn about 8:00 o’clock, after defendant had called him to do so, and after someone at the King’s Inn had told him “to leave.” On direct examination he testified as follows:
“Q Some time that evening, either earlier or later — I don’t know the time — the King’s Inn was robbed. You or Mr. Lightfoot did not go in there and rob the King’s Inn earlier that evening, did you?
“A No, sir.
“Q Now, from there you went to the VFW Club?
“A Yes.
“Q And you were broke; is that correct? “A I had a couple of dollars.
“Q Did you spend that at the VFW. “A I spent it, yes, sir.
“Q Now, from the VFW what was the occasion that got you over to this restaurant?
“A Well, when I went back up to get the lady I told her to call — we talked and I told her to call me up at Billy’s house, my brother, after the club was over, and if her husband hadn’t come in for her to come and meet me.
“Q O.K. You sort of had a tentative date?
“A Yes.”
According to his testimony, defendant looked for the girl at the Steak and Egg House, but did not find her there. He then went to the white Chevrolet automobile which had been parked by Lightfoot. He said he was “jogging” because it was cold. He said he did not go into the King’s Inn that night other than at the time he was there with a girl and left about 8:00. He denied any conversation between him and Lightfoot at the police department, as narrated by the witness Homer Reed, to the effect that he “shouldn’t have gone back to the King’s Inn.”
One of the two insistences on a reversal stems from a part of the trial proceedings during direct examination of Susan Lupole, a rebuttal witness for the State. She said that she was on duty as desk clerk at King’s Inn about 9:00 or 10:00 o’clock the night of the robbery of Mike Kerr. She was asked if anything unusual happened at that time. Upon an objection by defendant, the court excused the jury, and during its absence from the courtroom the parties made known their respective positions. The State was endeavoring to show by her that Thomas Lightfoot at that time “did in fact rob the King’s Inn,” to which defendant strenuously objected. Thereupon the following occurred:
“THE COURT: I am going to sustain it, Roy. I think you are treading on dangerous ground.
*348 “MR. MILLER: But are you going to allow me to show that he was in fact there at such and such a time?
“THE COURT: Yes, stop with that. Don’t go into detail as to what happened. “Bring the jury back.
“(The jury is now present and seated in the jury box.) (Examination resumed by Mr. Miller).
“MR. MILLER: At this point, let me bring a witness that has testified heretofore into the court room for identification purposes. He is in the hall.
“THE COURT: All right.
“MR. MILLER: Mr. Lightfoot, would you stand beside the Court Reporter over here over there.
“Q M’am, have you ever' seen this man before?
“A Yes, I have.
“Q When have you seen him first?
“A The very first time I saw him is the night he robbed me at the King’s Inn.
“MR. SHIPMAN: Now, Your Honor, we are going to object to that. That’s exactly what we objected to before.
“MR. MILLER: Let me withdraw that question for her.
“Q Did you or did you not see this defendant on the night of February 1, 1977, around nine or ten? Yes or no.
“A Yes.
“MR. SHIPMAN: Your Honor, we will have to further ask the Court to instruct the jury to disregard her answer to that previous question.
“THE COURT: Ladies and Gentlemen, if you will, disregard the answer that the witness has given to the previous question as to when she saw this defendant at the King’s Inn and what took place at . that time. Disregard that and do not consider that in your deliberation in deciding on your verdict in this case.
“MR. MILLER: We have no other questions.”
The defendant then cross-examined the witness, who testified that she knew defendant, that she had seen him on at least three occasions while he was a guest of the hotel.
Appellant now argues that the statement of the witness, that Lightfoot had robbed her at the King’s Inn, had established “such an aura of prejudice . . . that it could not be eradicated from the minds of the jury.”
It is clear that the particular testimony of the witness was not in line with the court’s ruling, and it is unfortunate that she was not interrogated, or that she did not answer, in such a way as not to inject into the case that which the court had ruled would not be admitted in evidence. It seems, however, that such frustration of the court’s ruling was a mere inadvertence. There is no claim that it was deliberate. As to the entire matter, the court ruled with the defendant. It sustained defendant’s objection, and after the witness had made the statement offensive to defendant, the court on motion of defendant complied impressively with the only request made by defendant and instructed the jury to disregard the answer made by the witness. There was no motion for a mistrial. There was no motion for a new trial.
A review on appeal is limited to matters on which action by the trial court was invoked, except in case of ineradicable harm, and, then, the matter should be first brought to the trial court’s attention by a motion for a new trial. Armstrong v. State, 49 Ala.App. 720, 275 So.2d 698, cert. denied, 290 Ala. 256, 275 So.2d 702 (1972); McDade v. State, 49 Ala.App. 533, 274 So.2d 89, cert. denied, 290 Ala. 369, 274 So.2d 93, cert. denied 414 U.S. 872, 94 S.Ct. 99, 38 L.Ed.2d 90 (1972); Alday v. State, 42 Ala.App. 21, 151 So.2d 220, cert. denied 274 Ala. 718, 151 So.2d 225 (1962); Bailey v. State, 41 Ala.App. 39, 123 So.2d 304, cert. denied, 271 Ala. 696, 123 So.2d 310.
In holding untenable appellant’s argument for a reversal by reason of the particular testimony of the witness that the trial court ruled inadmissible, we do not now hold that it was inadmissible. That particular question is not presented to us, and we do not find it necessary to decide it at this time. It should be noted, however, that, although we appreciate the position of the *349 trial court that m attempting to show the commission of other crimes the State is at times “treading on dangerous ground,” it can be well argued that the testimony of Susan Lupo, as to a robbery of her by Lightfoot at nine or ten o’clock of the night of the alleged robbery of Kerr, was relevant, irrespective of any difficulty in determining whether the evidence comes within any particular group of exceptions to the general rule of • exclusion of evidence of other crimes, as listed in Garner v. State, 269 Ala. 531, 114 So.2d 385 (1959) and other cases. Usually, the question arises in connection with proffered evidence as to defendant’s commission of another crime. Here, the relationship between defendant and Lightfoot on the night of the robbery charged was such as to call for the application of the proper principles of the law of evidence pertaining to the admissibility of evidence as to other crimes committed by the defendant.
Testimony by witnesses for the State, but disputed by Lightfoot and defendant in their testimony, of the incriminating conversation between the two as to their participation in a previous robbery at King’s Inn that night, to which evidence there was no objection by defendant, became an important issue between the parties. The testimony of Susan Lupo seems relevant to that issue, as it would have been if she had been able to testify as a witness for defendant that neither defendant nor Lightfoot had robbed anyone at the clerk’s desk at King’s Inn that night.
Evidence of the commission of another crime does not come within the exclusionary rule if it has “some bearing on the issue on trial other than to show in the defendant a tendency or disposition to commit the crime with which he is charged.” Garner v. State, supra.
Evidence of the commission of other crimes should not be admitted unless it “has some bearing upon the issue on trial other than to show the defendant’s bad character or moral delinquency.” Brasher v. State, 249 Ala. 96, 100, 30 So.2d 31, 35 (1947).
To be admissible, the evidence of independent and distinct crimes must be “relevant to the crime charged.” Mason v. State, 259 Ala. 438, 441, 66 So.2d 557, 559 (1953).
In McDonald v. State, 57 Ala.App. 529, 329 So.2d 583, cert. quashed 295 Ala. 410, 329 So.2d 596 (1975), cert. denied 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976), it was stated, per Judge DeCarlo:
“It is a well recognized rule that in a prosecution for a particular offense, proof tending to show that accused is guilty of committing other crimes at other times is inadmissible, even though they are similar to the ones charged in the indictment. Gassenheimer v. State, 52 Ala. 313. .
“It is well to note however, that although the general rule excludes evidence of similar offenses for the purpose of showing bad character of the accused, exceptions are recognized if relevant for any purpose other than to show a mere propensity by the defendant to commit the crime charged. Gassenheimer v. State, supra; Dennison v. State, 17 Ala.App. 674, 88 So.2d 211.”
In the analyses in several cases of the question whether evidence of other crimes was admissible, emphasis has been placed upon whether or not it was within one of the listed exceptions to the general rule of exclusion. However, we do not consider that by so doing the court was discarding the stated test of relevancy for any purpose other than that of showing a “propensity” to commit the kind of crime for which defendant is being tried or “his guilt through the medium of bad character.” McElroy, Law of Evidence in Alabama, § 69.01(1) (2d ed. 1951); Gamble, McElroy’s Alabama Evidence, § 69.01(1) (3d ed. 1975).
In Vincent v. State, 231 Ala. 657, 165 So. 844, cert. denied 298 U.S. 682, 56 S.Ct. 960, 80 L.Ed. 1402 (1936), the court upheld the admission in evidence of defendant’s participation in a robbery prior to and on the same day of the charged murder in the attempt to commit a robbery. It did so on two distinct grounds: (1) to rebut testimo *350 ny of defendant, given on his direct examination, that he had “never . .' . taken part in any holdup or robbery before.” and (2) as falling within the “motive” exception to the rule of exclusion. There is little dissimilarity between Vincent and this case on the question of the admissibility of the evidence.
The only other contention for 'a reversal is based upon the following portion of the record:
“MR. SHIPMAN: Your Honor, I am going to object to that statement, that this gun could have been used in I don’t know how many other robberies at Huntsville, Alabama, but that they got caught this time, it leaving the inference that this man committed other robberies. He is not being charged or tried for anything else today. I think that would be prejudicial to his case. We object to it.
“THE COURT: I sustain your objection.”
In accordance with the authorities herein-above cited, even if the argument was ineradicably prejudicial, which we do not hold, nothing is thereby presented for review in the absence of a motion for a new trial.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.